# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| **CH LIQUIDATION ASSOCIATION** | : | |
| **LIQUIDATION TRUST, et al.,** | : | |
| | : | **Case No. 5:18-cv-00752** |
| **Plaintiffs,** | : | |
| | : | **Judge Solomon Oliver, Jr.** |
| **vs.** | : | |
| | : | |
| **GENESIS HEALTHCARE SYSTEM,** | : | |
| **et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>REPLY OF DEFENDANTS GENESIS HEALTHCARE SYSTEM AND MATTHEW PERRY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COUNTS I, II, V, VI, VII, AND VIII OF THE COMPLAINT</u>
**[Related Docs. 28 & 48]**

Todd H. Neuman (0059819)
Richard K. Stovall (0029978)
Jeffrey R. Corcoran (0088222)
ALLEN KUEHNLE STOVALL
& NEUMAN LLP
17 South High Street, Suite 1220
Columbus, OH 43215
Telephone: (614) 221-8500
Facsimile: (614) 221-5988
Email: stovall@aksnlaw.com
neuman@aksnlaw.com
corcoran@aksnlaw.com
*Counsel for Defendants Genesis HealthCare*
*System and Matthew Perry*

## TABLE OF CONTENTS

I.    Introduction ...................................................................................................1

II.   Law & Argument ..........................................................................................4

    A.  The Trustee's Claim For Breach Of Contract Are
        Barred by Section 9.8 ...........................................................................4

        1.  Section 9.8 Of The Management Agreement Unambiguously
            Precludes The Trustee From Asserting His Breach Of Contract
            Claims ...........................................................................................4

        2.  The Trustee Cannot Show Procedural Or Substantive
            Unconscionability ........................................................................6

        3.  The Termination Agreement Preserved Genesis' Defenses Based
            On Section 9.8 Of The Management Agreement ................................11

    B.  The Complaint Fails To State A Claim For Breach of Fiduciary
        Duty Against Genesis ..........................................................................12

        1.  Genesis Was Not A Fiduciary, As Confirmed By The
            Management Agreement ................................................................12

        2.  The Trustee's Fiduciary Duty Claims Fail As They Are Duplicative
            Of His Breach Of Contract Claims ....................................................14

        3.  Genesis Was Not (And Could Not Have Been) A CCMH
            Board Member ..............................................................................15

    C.  The Court Should Dismiss The Trustee's Antitrust Claims .....................16

        1.  The Trustee Lacks Standing To Assert Antitrust Claims
            Against Genesis ...........................................................................16

        2.  The Trustee Has Not Alleged Facts That Show That Genesis
            And Another Entity Entered Into A Contract, Combination,
            Or Conspiracy To Restrain Trade .....................................................18

        3.  The Trustee's Claims For Actual And Attempted
            Monopolization Under Section 2 Of the Sherman Act
            Fail Because The Trustee Has Not Alleged That Genesis,
            Standing Alone, Had A Sufficient Share Of The Relevant Market .....19

        4.  The Complaint Fails To State A Claim For Relief Under
            The Valentine Act .........................................................................20

Certificate of Adherence to Page Limitations ................................................21

Certificate Of Service ....................................................................................21

## TABLE OF AUTHORITIES

*Acad. Imaging, LLC v. Soterion Corp.,* 352 F. App'x 59 (6th Cir. 2009) .........................15

*Airlink Commc'ns, Inc. v. Owl Wireless, LLC*, No. 3:10 CV 2296, 2011 WL 4376123
(N.D. Ohio Sept. 20, 2011) ......................................................................................6

*Am. Council of Certified Podiatric Physicians & Surgeons v Am. Bd. of
Podiatric Surgery, Inc.,* 323 F3d 366 (6th Cir. 2003).........................................................17

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ..............................................................................5

*Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.,*
67 Ohio St. 3d 274 (1993).....................................................................................13

*Brush Wellman Inc., Jeneric Pentrol Inc.,* No. 1:03CV2305, 2008 WL 64704
(N.D. Ohio Jan. 3, 2008)..........................................................................................6

*Christ Holdings, L.L.C. v. Schleappi,* 7th Dist. Noble No. 15 NO 427,
2016-Ohio-4664..........................................................................................................6

*Complete Gen.Const. Co. v. Koker Drilling Co.,* 10th Dist. Franklin No.
02AP-63, 202-Ohio-4478 .........................................................................................5

*Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752 (1984)...........................18

*Defiance Hosp. v. Fauster-Cameron, Inc.,* 344 F. Supp. 2d 1097 (N.D. Ohio 2004) .......17

*Dugan &Meyers Constr. Co. v. Ohio Dep't. of Adm. Servs.,* 113 Ohio St.
3d 226 (2007)...........................................................................................................5

*Garret v. Hooters- Toledo,* 295 F. Supp 2d 774 (N.D. Ohio 2003)...................................10

*Harrington v. Vandalia-Butler Bd. of Ed.,* 649 F.2d 434 (6th Cir. 1981) .........................12

*Hayes v. Oakridge Home*, 122 Ohio St. 3d 63 (2009) .........................................................6

*Hill v. Ohio State Univ. T & L,* No. 2:12-CV-984, 2013 WL 2295957
(S.D. Ohio May 24, 2013) ................................................................................15, 18

*Hope Academy Broadway Campus v. White Hate Mgt., L.L.C.,*
145 Ohio St. 3d 29 (2015).....................................................................................13

*Indiana Grocery, Inc. v. Super Valu Stores, Inc.,* 864 F.2d 1409
(7th Cir. 1989)..........................................................................................................16

*Infocision Mgmt. Corp. v. Found. For Moral Law, Inc.,* No. 5:08CV1342,
2009WL 2781749 (N.D. Ohio Aug. 28, 2009) .................................................15

*Jacco & Assocs. Inc. v. HVAC Inc.*, 5th Dist. Tuscarawas County No. 2018 AP
03 16, 2014-Ohio-128 ..........................................................................................6

*Johnson v. Metro Gov't of Nashville & Davidson Cty., Tenn.*, 502 F. App'x 523
(6th Cir. 2012).................................................................................15, 16, 18

*K & D Farms, Ltd. v. Enervest Operating, L.L.C.*, 5th Dist. Stark No. 2015CA38,
2015-Ohio-4475...............................................................................................15

*Miller-Holzwarth, Inc. v. L-3 Commc'ns. Corp.*, No. 4:09CV2282,
2010 WL 2253642 (N.D. Ohio June 2, 2010) ...................................................6, 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).........................17

*Muscioni v. Clemons Boat*, 6th Dist. Erie No. E-04-45, 2005-Ohio-4349 .........................11

*NicSand, Inc. v. 3M Co.*, 507 F3d 442 (6th Cir. 2007) ......................................................16

*Ohio Plumbing, Ltd. v. Fiorilli Constr., Inc.*, 8th Dist. Cuyahoga No. 10242,
2018-Ohio-1748.................................................................................................6

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 926 F.Supp.2d 36
(D.D.C.2013) ..................................................................................................19

*Prater v. Three C Body Shop, Inc.*, 10th Dist. Franklin No. 01AP-950,
2002-Ohio-1458...............................................................................................14

*Putnam v. Time Warner Cable of Se. Wisconsin Ltd. P'ship*,
255 Wis. 2d 447 (2002) .......................................................................................2

*Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673 (6th Cir. 2011)................................12

# I.    __INTRODUCTION__

One of the bedrock principles of Ohio law is that a sophisticated party should be held to the terms of an agreement the party freely negotiated.  The Trustee[1], in his Memorandum in Opposition to Genesis' Motion to Dismiss, repeatedly requests that the Court disregard this principle.  In opposing dismissal of his breach of contract claims, the Trustee asks that this Court find that Section 9.8 of the Management Agreement, a bargained-for provision in a commercial contract, is unenforceable.  In opposing dismissal of his breach of fiduciary duty claims, the Trustee asks that this Court ignore Section 1.3 of the Management Agreement, a provision that specifically defines Genesis' duties to CCMH, and instead impose common law fiduciary duties on Genesis (despite Genesis and CCMH being competitors).  In opposing dismissal of his antitrust claims, the Trustee asks that this Court ignore that CCMH readily assented to the very agreement that the Trustee argues gives rise to CCMH's claims under the Sherman Act and the Valentine Act.  The Court should hold the Trustee (CCMH's successor) to the terms of the Management Agreement and should dismiss Counts I, II, V, VI, VII, and VIII of the Complaint

The Trustee begins with a strained argument that Section 9.8 of the Management Agreement is ambiguous because the first and second sentences of this provision supposedly conflict.  The second sentence of this provision begins with the word "otherwise," which reflects that the second sentence only governs when the first sentence is inapplicable.  These two sentences are perfectly compatible.

The Trustee next claims that Section 9.8 is unconscionable.  But to establish unconscionability, the Trustee must show both procedural and substantive unconscionability, and the Trustee has not alleged facts supporting either.  CCMH was a sophisticated commercial entity

---

[1] Capitalized terms not defined herein have the same meaning as in Genesis' Motion to Dismiss filed June 11, 2018 [R. 28].

that was represented by counsel during the negotiations of the Management Agreement.  And just a few weeks before filing for bankruptcy—after all of the alleged Management Agreement-related misconduct identified in the Complaint—CCMH (while represented by different counsel) reaffirmed the validity of Section 9.8.  Consequently, the Trustee has no basis to assert, let alone prove, procedural unconscionability.  For this reason alone, the Trustee's unconscionability argument fails.

Though the Trustee argues that Section 9.8 is substantively unconscionable, this provision serves two valid purposes.  The first purpose is to allow Genesis, as the manager under the Management Agreement, to correct or respond to alleged breaches of the agreement[2].  This provision is also designed to prevent CCMH or its predecessor from manufacturing claims after-the-fact in an attempt to reduce CCMH's liability to Genesis under the Management Agreement and the related Line of Credit.  Parties in default on their financial obligations have a tendency to assert every imaginable defense to avoid those obligations.  This is precisely what the Trustee has done here: Although CCMH never took issue with Genesis' performance under the Management Agreement—and even declined to schedule claims against Genesis after filing for bankruptcy—the Trustee, in an effort to disallow Genesis' $10,000,000+ claim, now asserts that Genesis is responsible for CCMH's demise.

The Trustee further argues that CCMH, through Section B of the Termination Agreement, gave notice of CCMH's intent to pursue breach of contract claims against Genesis.  This

---

[2] The purpose of Section 9.8 is similar to the purpose of the voluntary payment doctrine.  Under the voluntary payment doctrine, absent certain exceptions, a plaintiff that voluntarily makes a payment cannot later attempt to recover that payment from the defendant.  "[T]he doctrine operates as a means to settle disputes without litigation by requiring the party contesting the payment to notify the payee of its concerns.  After such notification, a payee who has acted wrongfully can react to rectify the situation."  *Putnam v. Time Warner Cable of Se. Wisconsin, Ltd. P'ship*, 255 Wis. 2d 447, 460 (2002).   Both the voluntary payment doctrine and Section 9.8 are designed to avoid litigation, and under both, a party must act promptly to preserve its rights.

interpretation turns Section B on its head.  The unambiguous language of Section B states that the Termination Agreement ***does not*** affect either party's rights under Section 9.8 of the Management Agreement, so the Trustee cannot rely on the Termination Agreement to overcome Genesis' defense based on Section 9.8.

The Trustee's breach of fiduciary duty claims fare no better than his breach of contract claims.  The Management Agreement specifically defines Genesis' duties to CCMH, and importantly, the agreement does not state that Genesis must subordinate its interests to those of CCMH.  Further, the Trustee's breach of fiduciary duty claims are impermissibly duplicative of his breach of contract claims because Genesis' alleged fiduciary duty, according to the Complaint, arises from the Management Agreement.  As a result, these fiduciary duty claims must be dismissed.

With regard to the Trustee's Sherman Act claims, all of those claims fail because the Trustee lacks standing.  The Trustee has not alleged that Genesis and another entity colluded to raise prices or restrict output in the relevant market; the Trustee has alleged that Genesis, through its management, reduced CCMH's (and only CCMH's) output.  Even accepting the assumption that Genesis was responsible for a reduction in output at CCMH (something Genesis denies), this is not the type of harm that antitrust law is designed to redress.  Thus, all of the Trustee's Sherman Act claims should be dismissed.

Even if the Trustee has standing to assert Sherman Act claims, those claims still fail. Section 1 of the Sherman Act only governs conduct involving multiple entities, and Genesis and Mr. Perry, for the purposes of Section 1, are treated as a single entity.  The Memorandum in Opposition argues that the Trustee's Section 1 claim is also asserted against Robert Miller, but Mr. Miller did not sign the Management Agreement (the focal point of the Trustee's Section 1 claim)

3

and paragraphs 481 through 487 of the Complaint, which lay out the basis for the Trustee's Section 1 claim, do not even reference Mr. Miller.

The Trustee's Section 2 claims are similarly deficient. To establish that Genesis had sufficient market power to have a monopoly (or to attempt monopolization), the Trustee aggregates the market share of CCMH and Genesis. ***The Trustee's Section 2 claims therefore rest on the bizarre position that CCMH was both part of a monopoly and a victim of that monopoly***. The idea that a plaintiff can participate in a monopoly with a defendant—much like the idea of a "shared" or "joint" monopoly—is nonsensical because a monopoly, by definition, involves a single entity. Because Genesis, standing alone, did not have sufficient market power, the Trustee's Section 2 claims must be dismissed.

Finally, when a plaintiff's Sherman Act claims fail, the plaintiff's Valentine Act claims fail with them. Since the Court should dismiss the Trustee's Sherman Act claims, the Court should dismiss the Trustee's Valentine Act claims as well.

## II.     LAW & ARGUMENT

### A.     The Trustee's Claims For Breach Of Contract Are Barred By Section 9.8

#### 1.     Section 9.8 Of The Management Agreement Unambiguously Precludes The Trustee From Asserting His Breach Of Contract Claims

In pertinent part, the Management Agreement states:

> Any claim or cause of action against Manager for breach or non-performance under this Agreement shall be presented to Manager in writing within ten (10) days from the date of breach or non-performance, or shall be forever waived. ***Otherwise***, the failure of any Party to exercise any right or enforce any remedy contained in this Agreement shall not operate as or be construed to be a waiver of relinquishment of the exercise of such right or remedy, or of any other right or remedy herein contained.

Management Agreement at § 9.8 (emphasis added). The Trustee concedes that the "first sentence states that if CCMH does not provide notice of a breach to Genesis within ten days, CCMH waives its claim[.]" R., 48, Trustee's Memo. in Opp. at p. 16, Page ID # 955. As stated in Genesis' Motion

4

to Dismiss, courts routinely enforce comparable provisions in a wide variety of circumstances.  R. 28, Genesis' Motion to Dismiss at pp. 6-7, Page ID # 690-691.

The Trustee claims that Section 9.8 is ambiguous because the second sentence conflicts with the first. For a contract provision to be ambiguous, it must be "susceptible to two or more *reasonable* interpretations[,]" R., 48, Trustee's Memo. in Opp. at p. 15, Page ID # 954 (emphasis added), and the "mere fact that parties to a contract adopt conflicting interpretations of the document does not create ambiguity…." *Complete Gen. Const. Co. v. Koker Drilling Co.*, 10th Dist. Franklin No. 02AP-63, 2002-Ohio-4778, ¶ 13.  "[W]here a contract is plain and unambiguous, it does not become ambiguous by reason of the fact that in its operation *it will work a hardship upon one of the parties thereto and a corresponding advantage to the other, [and]… it is not the province of courts to relieve parties of improvident contracts.*"  *Dugan & Meyers Constr. Co. v. Ohio Dep't of Adm. Servs.*, 113 Ohio St. 3d 226, 231 (2007) (emphasis added and quotation marks omitted).

The Trustee's ambiguity argument ignores that the first and second sentences of Section 9.8 are separated by the word "otherwise," which clearly establishes that the second sentence only applies when the first sentence is inapplicable.  There is only one reasonable interpretation of Section 9.8—the interpretation put forth by Genesis.  Since there is no conflict between these two sentences, Section 9.8 is not ambiguous.

The Trustee also states that he should be entitled to discovery on the meaning of Section 9.8 (and on a number of other issues).  The Trustee, though, long ago received over seventy-thousand (70,000) pages from Genesis in connection with a Federal Rule of Bankruptcy Procedure 2004 examination (and the Trustee repeatedly quoted/referenced those documents in his Complaint).  The Trustee's claims are therefore unlikely to improve with additional discovery.  In

any event, because the Trustee's "complaint is deficient under Rule 8, he is not entitled to discovery[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).

### 2. The Trustee Cannot Show Procedural Or Substantive Unconscionability

"The party asserting unconscionability of a contract bears the burden of proving that the agreement is ***both*** procedurally and substantively unconscionable." *Jacco & Assocs. Inc. v. HVAC, Inc.*, 5th Dist. Tuscarawas County No. 2013 AP 03 16, 2014-Ohio-128, ¶ 59 (emphasis added). "Procedural unconscionability concerns the formation of the agreement and occurs ***when no voluntary meeting of the minds is possible***." *Christ Holdings, L.L.C. v. Schleappi*, 7th Dist. Noble No. 15 NO 427, 2016-Ohio-4664, ¶ 37 (emphasis added and quotation marks omitted).  "An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable." *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 69 (2009).

In analyzing procedural unconscionability, "[c]ourts consider each party's age, education, intelligence, business acumen and experience, who drafted the contract, and whether alterations in the printed terms were possible." *Christ Holdings*, 2016-Ohio-4664, ¶ 37. ***"[F]indings of unconscionability in a commercial setting are rare[,]***" *Brush Wellman Inc. v. Jeneric Pentron Inc.*, No. 1:03CV2305, 2008 WL 64704, at *4 (N.D. Ohio Jan. 3, 2008) (emphasis added and quotation marks omitted), particularly when the party alleging unconscionability was represented by counsel, *e.g.*, *Airlink Commc'ns, Inc. v. Owl Wireless, LLC*, No. 3:10 CV 2296, 2011 WL 4376123, at *4 (N.D. Ohio Sept. 20, 2011) (declining to find procedural unconscionability when "both parties are sophisticated business entities that were represented by counsel").  "Anyone entering into a commercial contract has the burden of assuring themselves of what they are taking part in." *Ohio Plumbing, Ltd. v. Fiorilli Constr., Inc.*, 8th Dist. Cuyahoga No. 106242, 2018-Ohio-1748, ¶ 29 (distinguishing consumer cases addressing unconscionability because the "case

6

involve[d] a contract between two commercial parties"); *see also Miller-Holzwarth, Inc. v. L-3 Commc'ns, Corp.*, No. 4:09CV2282, 2010 WL 2253642, at *4 (N.D. Ohio June 2, 2010) (refusing to find procedural unconscionability when the "contracts at issue were executed by two sophisticated business entities").

CCMH was a large, sophisticated business that had existed for more than 100 years and was represented by counsel in the negotiations. R. 1, Complaint at ¶¶ 37, 122-130, Page ID # 7 & 19. Genesis did not provide CCMH with an adhesion contract and demand immediate execution of the contract. On the contrary, the parties began negotiating the Management Agreement in May 2012 and did not execute the agreement until mid-June 2012 after back-and-forth negotiations concluded. *See id.* at ¶¶ 90-129, 163-165, Page ID # 14-19, 24. Robert Miller, who was CCMH's CEO at the time, was intimately involved in these negotiations. *Id.* In fact, CCMH's Board met at least twice to discuss a management agreement with Genesis. *See id.* at ¶ 100, 104, 128, Page ID # 16, 19.

But there is more. CCMH—on the eve of its bankruptcy, at a time when it was represented by its seasoned bankruptcy counsel, and after Genesis had engaged in the conduct that the Trustee claims violated the Management Agreement—reaffirmed the validity of Section 9.8. *See* Termination Agreement at § B. The Trustee has not even attempted to show procedural unconscionability in connection with this execution of the Termination Agreement—a separate agreeement.

Rather, the Trustee focuses solely on the original Management Agreement. The Trustee argues that Section 9.8 is procedurally unconscionable because Mr. Miller, at the time he negotiated the Management Agreement, was also negotiating an employment agreement with Genesis. R., 48, Trustee's Memo. in Opp. at p. 19, Page ID # 958. The Trustee neglects to mention that this employment agreement was executed in late July 2012, more than a month after the

Management Agreement was executed.  R. 1, Complaint at ¶ 172, Page ID # 25.  Even after the execution of the Management Agreement, Robert Miller was "accountable to both CCMH Board of Directors and Genesis Administration."  R. 1, Complaint at ¶ 110, Page ID # 17.  The Trustee further overlooks that the Management Agreement was ultimately approved by CCMH's Board— which, again, was represented by counsel and contained at least 10 separate board members—and that CCMH's Board was well aware that Robert Miller would be a Genesis employee after the execution of the Management Agreement.  *See* Management Agreement at § 2.1.1 (providing that Genesis would employ CCMH's CEO).

The Trustee cannot credibly claim that "no voluntary meeting of the minds [was] possible"; the Trustee is just unhappy with the terms of the agreement struck by his predecessor.  Since CCMH has fallen far short of establishing procedural unconscionability, the Court can reject CCMH's unconscionability argument without even addressing substantive unconscionability. *E.g.*, *Miller-Holzwarth, Inc.*, 2010 WL 2253642, at *4.

Even if the Court finds that CCMH has alleged facts supporting procedural unconscionability, the Court should still find that the Trustee has failed to establish that § 9.8 is substantively unconscionable.  Critically, the Management Agreement permitted CCMH to obtain a low-interest, unsecured, multi-million-dollar line of credit.  To protect this significant loan, Genesis negotiated a provision that obligated CCMH to provide notice within 10 days of an alleged breach of the Management Agreement so Genesis could address that breach.  As noted above, this provision was also aimed at preventing CCMH or its successor from fabricating breaches of the Management Agreement after the fact in an effort to reduce CCMH's liability to Genesis.

The Trustee's own Complaint highlights the importance of this provision in protecting Genesis against baseless claims.  According to the Complaint, Genesis breached the Management Agreement by designating Matt Perry, its CEO, as the Genesis representative on CCMH's Board.

8

If CCMH took issue with this designation, Section 9.8 of the Management Agreement mandated that CCMH promptly notify Genesis of this dispute.  Once presented with notice of this alleged breach, Genesis would have had the option to either correct the alleged breach by designating another representative or to respond by explaining why this designation was not a breach.  CCMH never asserted that Genesis breached the Management Agreement by selecting Mr. Perry to serve on CCMH's Board; in fact, CCMH apparently approved this selection.  *See* Management Agreement at § 4.2.1.  CCMH, through its inaction, waived its right to claim that Genesis breached the Management Agreement by appointing Mr. Perry to CCMH's Board, and the Trustee is bound by that waiver.

The Trustee complains that Section 9.8 is one-sided because the provision only requires CCMH to provide notice of claims.  This provision, though, was designed to protect Genesis, as the lender, from baseless claims and to provide notice to Genesis, as a manager, so Genesis could take remedial steps.  Since CCMH was not loaning money or acting as the manager, CCMH did not need the protections of Section 9.8.

The Trustee also asserts that Section 9.8 was unconscionable because CCMH's executives were conflicted and "only the CCMH Board would be in a position to satisfy the ten-day notice requirement in the Waiver Provision."  R. 48, Trustee's Memo. in Opp. at p. 18, Page ID # 957.  This incorrectly assumes that CCMH's top executives were beholden to Genesis and could not act in the best interests of CCMH.  The Trustee's own Complaint states that Lori Wildi, who took over as CCMH's CEO in February 2014, acted independently of Genesis in her efforts to safeguard the interests of CCMH.  *See* R. 1, Complaint at ¶¶ 400-411, Page ID # 59.  The Trustee's position also overlooks that Genesis only employed a handful of CCMH's executives, *see* Management Agreement § 2.1, so there were numerous other CCMH representatives who could have reported Genesis' alleged misconduct.

9

The Trustee claims since CCMH's Board did not meet every ten days "there was no way for contract breaches to be identified by the CCMH Board in the relevant timeframe."  R. 48, Memo. in Opp. at p. 18, Page ID # 957.  CCMH's Board, like every other board of directors, had the ability to call a special meeting.    If CCMH's Board felt that Genesis was not fulfilling its obligations under the Management Agreement, CCMH was more than capable of providing Genesis with notice under Section 9.8.  CCMH's Board, of course, never provided such notice because CCMH's Board never considered Genesis in breach.

To support his unconscionability argument, the Trustee cites *Garrett v. Hooters-Toledo*, 295 F. Supp. 2d 774 (N.D. Ohio 2003).  In that case, the plaintiff, a former Hooters waitress, had signed an "Agreement to Mediate and Arbitrate Employment–Related Disputes." *Id.* at 777. Under the agreement, the plaintiff was required to assert a claim within 10 days of the claim arising.  *Id.* at 781-782.  The court, finding the "limitation ha[d] no apparent justification[,]" determined that the provision was substantively unconscionable.  *Id.* at 782.  The court also found that the plaintiff had demonstrated procedural unconscionability because the plaintiff "had no opportunity to negotiate the terms of the ADR Agreement"; the plaintiff stated she did not understand the provision; and "had [the plaintiff] been able to understand the impact of the rights she was giving up and the limitations to which she was acquiescing, plaintiff and any other person in her position would have objected to many of the provisions of the agreement."  *Id.* at 784.

While the limitation in *Garrett* had no apparent justification, Section 9.8 of the Management Agreement was designed to protect Genesis from meritless, after-the-fact claims and to allow Genesis to correct perceived breaches of the Management Agreement.  Further, in *Garrett*, the plaintiff was a "lone former employee" while the defendant was "a large, sophisticated, nation-wide employer[.]"  *Id.* at 782. By contrast, both Genesis and CCMH were large, sophisticated commercial entities that were represented by separate counsel and spent weeks negotiating the

10

applicable agreement, which was ultimately approved by their separate boards. And while the plaintiff in *Garrett* claimed she did not understand the applicable agreement, the Trustee has not argued and cannot argue that CCMH did not understand Section 9.8 of Management Agreement. The Trustee's reliance on *Garrett* is therefore sorely misplaced[3].

### 3. The Termination Agreement Preserved Genesis' Defenses Based On Section 9.8 Of The Management Agreement

The Trustee argues that CCMH provided notice of Genesis' breaches through Section B of the Termination Agreement, but problems with this argument abound[4]. The Trustee's lengthy Complaint references the Termination Agreement but does not state that the Termination Agreement provided notice of CCMH's claims in compliance with Section 9.8 (or, for that matter, that CCMH ever provided notice under Section 9.8). This should come as no surprise since the Trustee's interpretation of Section B is flatly inconsistent with the text of the provision. The plain language of Section B states that the Termination Agreement ***does not*** affect either party's rights under Section 9.8 of the Management Agreement. Yet the Trustee's position is that Section B of the Termination Agreement eliminates Genesis' preexisting defense based on Section 9.8 of the Management Agreement. This position cannot be squared with the unambiguous language of Section B.

---

[3] The Trustee also relies on *Muscioni v. Clemons Boat*, 6th Dist. Erie No. E-04-45, 2005-Ohio-4349. In *Muscioni*, the plaintiff, a consumer, had purchased a boat from a business, and the warranty for the boat stated that all repairs had to be made at a factory in Watskea, Illinois and that all transportation charges would have to be borne by the purchaser. *Id.* at ¶¶ 3-8. The appellate court did not address procedural unconscionability but did find that there was sufficient evidence to support the trial court's finding that the warranty was so outrageous as to be unconscionable. *Id.* at ¶ 23. *Muscioni*, a consumer case, is not on point.

[4] The Trustee, in a footnote, argues that the Complaint alleges that CCMH complied with all conditions precedent because the Complaint contains the assertion that "CCMH performed its obligations under the Management Agreement during the term thereof." R. 48, Trustee's Memo. in Opp. at p. 15 n. 5, Page ID # 954. This is the type of conclusory allegation that this Court should disregard under *Twombly* and *Iqbal*.

11

Nor can this position be squared with CCMH's conduct in its bankruptcy. CCMH did not list a claim against Genesis under the Management Agreement (or otherwise) in its original schedules filed August 15, 2016 or in its amended schedules filed September 27, 2016. *See In re CH Liquidation Association*, Case No. 16-51552, Docs. 128 & 202.[5] If CCMH genuinely believed that it had claims against Genesis in June 2016, CCMH surely would have disclosed those claims in these bankruptcy filings.

More importantly, under Section 9.8, CCMH was required to provide notice within 10 days of the alleged breach. According to the Trustee's own Complaint, in "November 2015, CCMH and Genesis suspended the Management Agreement." R. 1, Complaint at ¶ 423, Page ID # 62. The Termination Agreement was executed in June 2016, *id.* at ¶ 424, Page ID # 62, long after Genesis ceased performing services under the Management Agreement. Therefore, even if Genesis' alleged breaches were "continuous and cumulative"—a point Genesis does not concede—CCMH was required to give notice of those continuous and cumulative breaches in November or December of 2015. CCMH did not do so.

**B.    The Complaint Fails To State A Claim For Breach Of Fiduciary Duty Against Genesis**

**1.    Genesis Was Not A Fiduciary, As Confirmed By The Management Agreement**

To recover for breach of fiduciary duty, the Trustee would need to show that Genesis was a fiduciary of CCMH. But the terms of the Management Agreement and the parties' relationship reflect that Genesis did not owe CCMH fiduciary duties. The Management Agreement specifically defines the duties Genesis owed to CCMH, *see* Management Agreement at § 1.3, and the Trustee

---

[5] In ruling on Genesis' Motion to Dismiss, this Court is entitled to consider public records without converting the motion to one for summary judgment. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-681 (6th Cir. 2011); *see also Harrington v. Vandalia-Butler Bd. of Ed.*, 649 F.2d 434, 441 (6th Cir. 1981) ("[I]t is clear that a court may take judicial notice of its own record of another case between the same parties").

is not entitled to expand those duties through a fiduciary duty claim.  Additionally, Genesis and CCMH were competitors, and a fiduciary has a "duty to act *for someone else's benefit*, while subordinating [his or her] personal interests to that of the other person." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 282 (1993) (emphasis in original; quoting Black's Law Dictionary (6 Ed.1990) 625).  When parties have competing financial interests, Ohio courts will not imply a fiduciary relationship.  *See id.* at 283-284 (rejecting argument that condominium developer owed fiduciary duties to condominium association because fiduciary is expected to subordinate interests to beneficiary and the "developers, owners, and purchasers have different, and often competing, financial interests").

The Trustee acknowledges that the Management Agreement states that Genesis was an independent contractor of CCMH but argues that this fact is not dispositive of whether Genesis owed CCMH fiduciary duties.  R. 48, Trustee's Memo. in Opp., pp. 21-25, Page ID # 960-964. The Trustee relies on *Hope Academy Broadway Campus v. White Hat Mgt., L.L.C.*, 145 Ohio St. 3d 29 (2015), but this case undermines the Trustee's position that Genesis was a fiduciary.  In *Hope Academy*, the Court noted that in "determining whether a fiduciary relationship has been created, the main question is *whether a party agreed to act primarily for the benefit of another in matters connected with its undertaking.*"  *Id.* at 40-41 (emphasis added).  The *Hope Academy* case did not involve competitors; rather, the defendant's "purpose, reflected in the contracts, was to advance the [plaintiffs'] interests."  *Id.* at 41.  Here, the Management Agreement, a fully integrated document[6], governs the relationship between Genesis and CCMH.  Conspicuously absent from that agreement is a requirement that Genesis subordinate its interests to the interests of CCMH.

---

[6] Management Agreement at § 9.4.

13

## 2. The Trustee's Fiduciary Duty Claims Fail As They Are Duplicative Of His Breach of Contract Claims

The Trustee's fiduciary duty claims should also be dismissed because those claims arise from the Management Agreement.  When a plaintiff alleges a claim for breach of contract, the plaintiff, to plead a related tort claim, must allege the breach of "a duty owed separately from that duty created by the contract, that is, a duty owed even if no contract existed."  *Prater v. Three C Body Shop, Inc.*, 10th Dist. Franklin No. 01AP-950, 2002-Ohio-1458, *4.  The plaintiff must also show "damages attributable to the wrongful acts which are in addition to those attributable to the breach of contract."  *Id.*

In his Complaint, the Trustee alleges that Genesis owed fiduciary duties to CCMH based on:

> (a) its position as Manager ***pursuant to the Management Agreement***;
> (b) its authority, control and responsibility for CCMH's operations and finances ***vested in it by the Management Agreement***;
> (c) its position of special trust and confidentiality with CCMH;
> (d) its superiority, control and/or influence over CCMH; and
> (e) its actual course of conduct.

R. 1, Complaint at ¶ 452, Page ID # 66 (emphasis added).  The first two bases expressly relate to the Management Agreement, while the third, fourth, and fifth bases implicitly relate to the Management Agreement.  In other words, Genesis' alleged "position of special trust and confidentiality," "superiority, control and/or influence," and "actual course of conduct" all arise from the Management Agreement.  Without the Management Agreement, there was no relationship between CCMH and Genesis.  As a result, based on the allegations in the Trustee's own Complaint, Genesis would not have owed CCMH fiduciary duties "even if no contract existed."  *Prater*, 2002-Ohio-1458, *4; *Infocision Mgmt. Corp. v. Found. for Moral Law, Inc.*, No. 5:08CV1342, 2009 WL 2781749, at *5 (N.D. Ohio Aug. 28, 2009); *K & D Farms, Ltd v. Enervest Operating, L.L.C.*, 5th Dist. Stark No. 2015CA38, 2015-Ohio-4475, ¶ 40

14

The Trustee has also failed to identify separate damages attributable to Genesis' breaches of fiduciary duty. He therefore cannot proceed on his fiduciary duty claims against Genesis. *See, e.g.*, *K & D Farms*, 2015-Ohio-4475, ¶ 40.

The Trustee, relying on *Acad. Imaging, LLC v. Soterion Corp.*, 352 F. App'x 59 (6th Cir. 2009), argues that when "the acts that allegedly breach a party's fiduciary duties cannot form the basis of a contract action…, then the tort claim alleging breach of fiduciary duties in not purely contractual." R. 48, Trustee's Memo. in Opp. at p. 26, Page ID # 965. Yet the Trustee has alleged the same conduct of Genesis gave rise to both the Trustee's claims for breach of the Management Agreement and breach of fiduciary duty. *See* R. 1, Complaint at ¶¶ 442-448, 455-457, Page ID # 65-68. Therefore, the *Academic Imaging* case provides no guidance here[7].

### 3. Genesis Was Not (And Could Not Have Been) A CCMH Board Member

In a desperate attempt to save his fiduciary duty claims, the Trustee argues that Genesis owed CCMH fiduciary duties because Genesis was a de facto board member of CCMH. Nothing in the Trustee's 600-paragraph Complaint suggests that Genesis owed fiduciary duties to CCMH because Genesis was a de facto board member. Indeed, the Complaint contains a paragraph explaining the basis for CCMH's position that Genesis owed fiduciary duties, but this paragraph makes no reference to Genesis' ability to designate a CCMH board member. *See* R., Complaint at ¶ 452, Page ID # 66. A "plaintiff cannot salvage an insufficient complaint by attempting *de facto* amendment of that pleading via a response brief to a motion to dismiss." *Hill v. Ohio State Univ. T & L*, No. 2:12-CV-984, 2013 WL 2295957, at *3 (S.D. Ohio May 24, 2013); *Johnson v.*

---

[7] In *Academic Imaging*, the plaintiff, a member of an LLC, sued the defendant, the other member in the LLC, for breach of fiduciary duty because the defendant "collect[ed] as a loan an amount it had represented to [the plaintiff] to be a capital contribution[.]" *Id.* at 69. The court rejected the argument that this fiduciary duty claim was duplicative because the defendant's allegedly wrongful collection could not be constructed as a breach of the operating agreement (the applicable contract). *See id.*

*Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 502 F. App'x 523, 541-542 (6th Cir. 2012) ("The court may not ... take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).") (quoting Moore's Federal Practice § 12.34). The Court should disregard CCMH's new contention that Genesis was somehow a de facto board member of CCMH.

Even if the Court considers this novel argument, the Court should reject it. The Trustee cites no authority for the position that a legal entity can serve as a director on the board of a non-profit corporation, and the text of R.C. § 1702.04 suggests that directors must be individuals. *See, e.g.*, R.C. § 1702.04 (stating articles of incorporation for non-profit may set forth the "names of individuals who are to serve as the initial directors"). Further, this position ignores the well-settled rule that a corporation is separate from the individuals who own and operate the corporation. The Trustee's argument is without merit and should be rejected.

### C.     The Court Should Dismiss The Trustee's Antitrust Claims

#### 1.     The Trustee Lacks Standing To Assert Antitrust Claims Against Genesis

The Trustee cannot deny that courts are "reasonably aggressive in weeding out meritless antitrust claims at the pleading stage." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (quotation marks omitted). The Trustee also cannot deny that "competitors' theories of injury…deserve particularly intense scrutiny." *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1419 (7th Cir. 1989). And the Trustee cannot deny that "courts typically have permitted such [competitor] claims to proceed only when one of the rivals has engaged in some form of predatory pricing or illegal tying[.]" *NicSand*, 507 F.3d at 451.

Though the Trustee has not alleged predatory pricing or illegal tying, he still contends that he has standing because the Complaint asserts that Genesis' conduct led to higher prices and a reduction in output. *See* R. 48, Trustee's Memo. in Opp. at p. 29, Page ID # 968. But the Supreme

16

Court has concluded that a competitor generally lacks standing to assert antitrust claims based on such alleged harm:

> [The plaintiffs cannot] recover damages for any conspiracy by [the defendants] to charge higher than competitive prices in the American market. Such conduct would indeed violate the Sherman Act, but it could not injure [the plaintiffs]: as [the defendants'] competitors, [the plaintiffs] stand to gain from any conspiracy to raise the market price in [consumer electronic products].  Finally, for the same reason, [the plaintiffs] cannot recover for a conspiracy to impose nonprice restraints that have the effect of either raising market price or limiting output. ***Such restrictions, though harmful to competition, actually benefit competitors by making supracompetitive pricing more attractive***.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582-583 (1986) (emphasis added and citations omitted)[8].  CCMH was a competitor of Genesis and therefore would benefit from an increase in prices or reduction in output in the relevant market.

To avoid this inescapable conclusion, the Trustee suggests that Genesis was responsible, and can be held liable under the Sherman Act, for CCMH's ***own*** reduction in output.  This position is at odds with the Management Agreement, which plainly states that CCMH's Board, and not Genesis, is ultimately responsible for the management of CCMH.  *See* Management Agreement at § 1.4.  Moreover, the Trustee cites no authority for the position that a plaintiff can recover against a defendant under the Sherman Act because the defendant, ***through management of the plaintiff***, reduced the plaintiff's (and only the plaintiff's) output[9].  This is simply not the type of harm antitrust law is designed to prevent.  After all, the "Sherman Act protects competition, not competitors." *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 372 (6th Cir. 2003).

---

[8] The Trustee claims that *Defiance Hosp. v. Fauster-Cameron, Inc.*, 344 F. Supp. 2d 1097 (N.D. Ohio 2004) supports his position on competitor standing.  But the plaintiff in *Defiance Hosp.* was "both a consumer and competitor." *Id.* at 1107.  Thus, the *Defiance Hospital* court's holding on standing is not relevant here.

[9] This case is fundamentally different from an output-restriction case in which a group of competitors all agree to reduce output and this market-wide reduction in output leads to higher prices for consumers.

17

What is more, CCMH was a party to the Management Agreement—the main target of the Trustee's antitrust claims.  The Trustee, as CCMH's successor, is a poor champion of consumers.  He therefore lacks standing to pursue antitrust claims against Genesis.

> **2.** **The Trustee Has Not Alleged Facts That Show That Genesis And Another Entity Entered Into A Contract, Combination, Or Conspiracy To Restrain Trade**

"Section 1 of the Sherman Act…reaches unreasonable restraints of trade effected by a contract, combination ... or conspiracy *between separate entities*."  *Copperweld Corp. v. Independence Tube Corp*., 467 U.S. 752, 768 (1984) (emphasis added).  Under *Copperweld Corp.*, a corporation and its CEO are treated as a single entity.  *See id.* at 767-770.  Consequently, Genesis and Mr. Perry could not have conspired to violate Section 1 of the Sherman Act.

The Trustee argues that the Management Agreement is a "contract...in restraint of trade[.]"  R. 48, Trustee's Memo. in Opp. at p. 32, Page ID # 971.  The only other party to this supposed contract in restraint of trade was CCMH, the Trustee's predecessor.  The Trustee has attempted to use Mr. Miller as a scapegoat for CCMH, but Mr. Miller did not even sign the Management Agreement.  Instead, Max Crown, the chairman of CCMH's board, signed the Management Agreement on behalf of CCMH, and the Trustee has not pursued claims against Mr. Crown.

The Trustee also argues that the "Complaint is replete with allegations of Miller collaborating with Genesis, in connection with the Management Agreement, to hinder competition by CCMH[,]" *id.* at p. 33, Page ID # 972, but for support, the Trustee can only cite the general allegations relating to negotiation of the Management Agreement in the factual section of the Complaint.  The allegations in Count V make no reference to Mr. Miller, and the Trustee cannot cure this pleading deficiency in his Complaint with his Memorandum in Opposition.  *See Hill*, at *3; *Johnson*, 502 F. App'x at 541-542

18

3.    **The Trustee's Claims For Actual And Attempted Monopolization Under Section 2 Of The Sherman Act Fail Because The Trustee Has Not Alleged That Genesis, Standing Alone, Had A Sufficient Share Of The Relevant Market**

To prevail on a claim for actual or attempted monopolization under Section 2 of the Sherman Act, the Trustee must show that Genesis controlled a sufficient share of the relevant market.  R. 28, Genesis' Motion to Dismiss at pp. 14-17, Page ID # 698-701.  Because Genesis, by itself, did not control a large enough portion of the relevant market, the Complaint alleges that Genesis and CCMH, in the aggregate, controlled 66% of the relevant market.  According to the Trustee, the Complaint aggregates the market share of Genesis and CCMH because "Genesis…operated Genesis and CCMH as one entity after the Management Agreement took effect."  R. 48, Trustee's Memo. in Opp. at p. 34, Page ID # 973.

As an initial matter, this allegation is inconsistent with the other allegations in the Trustee's Complaint, which repeatedly refers to CCMH and Genesis as competitors.  *E.g.,* R. 1, Complaint at ¶¶ 155 & 180, Page ID # 23 & 26.  The Complaint even states that Genesis "viewed and treated CCMH as a competitor throughout the life of the Management Agreement and Perry encouraged Genesis to continue to compete with CCMH…." *Id.* at ¶ 194, Page ID # 28. This allegation is also inconsistent with the Management Agreement, which states that CCMH's Board (and not Genesis) was responsible for the operation of CCMH and that nothing in the Management Agreement was "intended to increase, alter, weaken, displace or modify the responsibility of CCMH Board for CCMH's direction and control as set forth in CCMH's Articles of Incorporation and Code of Regulations."  Management Agreement at § 1.4.

As noted in the Motion to Dismiss, this allegation is also inconsistent with the case law holding that the "very phrase 'shared monopoly' is paradoxical."  *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 926 F.Supp.2d 36, 46 (D.D.C.2013).  While the Trustee has attempted to distinguish these cases, he cites no authority for his position that a competitor-plaintiff in an

19

antitrust case can combine its own market share with the market share of the competitor-defendant to establish sufficient market power for a monopolization claim.  The Trustee's position, if accepted, would allow an antitrust plaintiff to recover under the Sherman Act when the plaintiff was a part of the challenged monopoly.  The Court should decline to be the first to construe Section 2 of the Sherman Act in this fashion.

      **4.**       **The Complaint Fails To State A Claim For Relief Under The Valentine Act**

The Trustee does not dispute that when a plaintiff's Sherman Act claims fail, the plaintiff's Valentine Act claims fail with them.  *See* R. 48, Trustee's Memo. in Opp. at pp. 35-36, Page ID # 974-975.  Because the Trustee's Sherman Act claims should be dismissed, the Trustee's Valentine Act claims should be dismissed as well.

**III.**     **CONCLUSION**

For the foregoing reasons, the Court should dismiss Counts I, II, V, VI, VII, and VIII of the Complaint.

                      Respectfully submitted,

                      /s/ Todd H. Neuman
                      Todd H. Neuman, Trial Counsel  (0059819)
                      Richard K. Stovall       (0029978)
                      Jeffrey R. Corcoran      (0088222)
                      ALLEN KUEHNLE STOVALL & NEUMAN LLP
                      17 South High Street, Suite 1220
                      Columbus, OH 43215
                      Telephone:  (614) 221-8500
                      Facsimile:  (614) 221-5988
                      Email:  stovall@aksnlaw.com
                                neuman@aksnlaw.com
                                corcoran@aksnlaw.com
                      *Counsel for Defendants Genesis HealthCare System and Matthew Perry*

## **CERTIFICATE OF ADHERENCE TO PAGE LIMITIATIONS**

The memorandum in support of this motion adheres to the page limitations set forth in Local Rule 7.1 of the United States District Court for the Northern District of Ohio for an Unassigned or Standard Track case.  The present action has not yet been assigned to a track.

 /s/ Todd H. Neuman
Todd H. Neuman

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on the 27th day of July, 2018.  Notice of this filing will be sent by the Court's electronic filing system to all counsel of record, who may access this filing through the Court's system.

In addition, a copy of the foregoing was sent, via regular U.S. mail, this 27th day of July, 2018 to:

Robert Miller
1425 E. Main Street
Coshocton, OH 43812

 /s/ Todd H. Neuman
Todd H. Neuman