UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CH LIQUIDATION ASSOCIATION LIQUIDATION TRUST, *et al.*, | ) ) ) | Case No.: 5:18 CV 752 |
| Plaintiffs | ) ) | |
| v. | ) ) | JUDGE SOLOMON OLIVER, JR. |
| GENESIS HEALTHCARE SYSTEM, *et al.*, | ) ) ) ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case are Defendants Bricker & Eckler, LLP and Michael Gire's Motion for Summary Judgment (ECF No. 53). For the following reasons, the court denies the Motion.

### I. BACKGROUND

In the aftermath of the financial collapse of Coshocton Memorial Hospital Association ("CCMH" or "Debtor"), Plaintiff CH Liquidation Association Liquidation Trust and Joseph Oriti, in his capacity as Debtor Representative and Liquidation Trustee of the estate of CCMH ("Plaintiff"), filed a Complaint seeking redress for the injuries allegedly caused by eight Defendants (ECF No. 1). Plaintiff claims, among other things, that Defendants' misconduct led CCMH to file for chapter 11 protection and/or deepened CCMH's insolvency. (Compl. ¶ 7.) Counts X and XI of the Complaint name CCMH's former attorneys, Bricker & Eckler, LLP ("Bricker") and Michael Gire ("Gire"), a partner with the firm, claiming attorney malpractice. (*Id*. ¶¶ 523–36.)

#### A. Factual Background

Coshocton Memorial Hospital Association operated a general acute care not-for-profit hospital in Coshocton, Ohio, as well as a number of primary care and specialty physician clinics. (*Id*.

¶15.) As early as the fall of 2008, at a time of financial difficulty for CCMH and other rural hospitals, CCMH began a complicated relationship with Genesis Healthcare System ("Genesis"), a healthcare provider located in the same region as CCMH. Although the relationship would start with the CEO of Genesis and the CEO of CCMH, each serving as equals on a three-member not-for-profit healthcare alliance board, Genesis would later control the decisions of CCMH pursuant to a Management Agreement executed in 2012. (*Id*. ¶¶ 57–64, 90–121.) Eventually, the relationship ended when CCMH filed for Chapter 11 protection in 2016.

Plaintiff's twenty-count Complaint arises from the CCMH-Genesis relationship. In the Complaint, Plaintiff alleges a range of anti-trust and tort claims against CCMH's auditor, CCMH's executive leadership, Genesis' executive leadership, and, most relevant to this pending Motion, counsel for CCMH and Genesis. Plaintiff claims that Bricker and Gire committed malpractice when they "simultaneously represented Genesis and CCMH in their dealings with each other relating to, among other things, the Management Agreement and several ancillary agreements." (*Id*. ¶ 5.)

In 2008, when Genesis, CCMH, and another regional hospital formed East Ohio Hospital Alliance ("EOHA"), a non-profit healthcare alliance, the EOHA retained Bricker to provide legal services and advice to the EOHA. (*Id*. ¶ 61.) During this time, Plaintiff states that Bricker had "developed a relationship of trust" with CCMH. (*Id.* ¶ 113.) In May of 2012, President and CEO of Genesis Matthew Perry ("Perry") and then-CEO of CCMH Robert Miller ("Miller") began discussing an arrangement whereby Genesis would manage the financially struggling CCMH. (*Id.* ¶ 90.) Plaintiff states Genesis hired Bricker to represent Genesis' interests in the negotiation and drafting of the Management Agreement. (*Id*. ¶ 112.) However, Plaintiff claims that in these

negotiations, Bricker took advantage of the trust relationship it had previously built with CCMH. (*Id.* ¶ 114.) Specifically, Plaintiff maintains that Bricker negotiated directly and only with Miller, and did not include CCMH's outside counsel in these negotiations. (*Id.* ¶¶ 114, 119.) Furthermore, Plaintiff contends that Bricker negotiated with Miller, even though Bricker was aware that Miller was to be employed by Genesis following the execution of the Management Agreement. (*Id.* ¶ 120.) Thus, Plaintiff implies that because Bricker knew of Miller's self-interested motives in these negotiations, it would have also known that Miller may not have been representing the best interests of CCMH during these negotiations. (*Id.*) Accordingly, Plaintiff asserts that because Bricker knew that CCMH's interests were not being fully represented by Miller, Bricker was effectively representing both Genesis and CCMH in the parties' negotiations. (*See id.* ¶ 121.)

Finally, Plaintiff maintains that after the Management Agreement was executed, Bricker continued to purport to represent both Genesis and CCMH in the parties' negotiations and dealings with one another. (*Id.*) In particular, Plaintiff points to two situations supporting Plaintiff's allegations of Genesis' dual representation. First, Plaintiff states that Genesis tasked Bricker with preparing a Lab Services Agreement and asset purchase agreement between CCMH and Genesis, but on behalf of both parties. (*Id.* ¶ 345.) Plaintiff notes that Bricker purported to review the Lab Services Agreement on behalf of Genesis (*id.* ¶346–48), but Genesis also anticipated that Bricker was to review the Lab Services Agreement on behalf of CCMH. (*Id.* ¶ 352.) Nevertheless, Plaintiff concedes that Bricker obtained conflict waivers from both Genesis and CCMH with respect to Bricker's preparation of the Lab Services Agreement. (*Id.* ¶ 346–48, 352.) Second, Plaintiff asserts that Bricker represented CCMH at CCMH Board meetings, and that its representation of CCMH was a conflict of interest with Bricker's contemporaneous representation of Genesis. (*Id.* ¶ 363.) Plaintiff

points to the September 10, 2014 CCMH Board meeting in which Genesis' CEO asked Gire to represent CCMH at the meeting. (*Id*. ¶ 365, 366.) Plaintiff states that Gire presented at the meeting, and stayed to answer questions from the CCMH Board. (*Id*. ¶ 370, 375.) Plaintiff asserts that Gire continued to attend board meetings and was still performing legal services for CCMH as late as May 4, 2015. (*Id*. ¶¶ 376–79.)

### B. Procedural History

On June 30, 2016, CCMH filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio. (*Id*. ¶ 30.) CCMH continued to operate as debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 after the Petition Date. (*Id*. ¶¶ 30–31.) On October 3, 2016, the Bankruptcy Court entered an order approving CCMH's sale of substantially all of its assets, and the sale transaction closed on October 31, 2016. (*Id*. ¶¶ 32–33.) On July 12, 2017, the Bankruptcy Court confirmed the Chapter 11 plan (the "Plan"), and the Plan became effective on August 1, 2017. (*Id*. ¶¶ 34, 36.) Plaintiff filed the Complaint in the present action on April 3, 2018. On July 25, 2018, Defendants filed their motion for summary judgment with respect to Counts X and XI of the Complaint, arguing, on grounds of res judicata, that the confirmation of the Plan bars relitigation of Plaintiff's claims against Defendants (ECF No. 53). Plaintiff submitted a Response on August 8, 2018, and Defendants replied on August 22, 2018 (ECF Nos. 59, 62).

### II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by citing to particular parts of materials in the record, or showing that materials cited do not establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In most cases, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome

summary judgment;" it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. LAW AND ANALYSIS

Defendants argue that the res judicata effect of the bankruptcy Plan bars Plaintiff from bringing the malpractice claims. A claim is barred by res judicata if there is "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Browning v. Levy*, 283 F.3d 761, 771–72 (6th Cir. 2002). Plaintiff does not dispute that the claim meets the elements of res judicata, but argues instead that the claim may be litigated because it was preserved in the Plan. *In re Mt. Glacier LLC*, 877 F.3d 246, 248 (6th Cir. 2017) (recognizing that res judicata does not apply if the debtor expressly retained an existing claim for post-bankruptcy litigation); *Browning*, 283 F.3d at 774 (same). Defendants dispute that Plaintiff has specifically and adequately preserved the claim. (Mot. at 13–20.)

In *Browning v. Levy*, the United States Court of Appeals for the Sixth Circuit determined that a debtor had insufficiently preserved claims of malpractice and breach of fiduciary duty in their bankruptcy plan, and was thus barred by res judicata from litigating the claims. 283 F.3d at 766. In reading this decision, the court rejected the debtor's argument that an "omnibus reservation of rights"

should be sufficient to preserve the claims.[1] The *Browning* court found that the blanket reservation was insufficient because "it did not enable the value of [plaintiff's] claims to be taken into account in the disposition of the debtor's estate." *Id*. at 775. In addition, "it neither names [the defendant] nor states the factual basis for the reserved claims." *Id.*

A similar issue was before the Sixth Circuit in *In Re Mountain Glacier, LLC*, 877 F.3d 246 (6th Cir. 2017). However, the Sixth Circuit ruled in favor of the debtor in *In Re Mountain Glacier*, finding that the debtor had adequately reserved a right to pursue counterclaim. *Id*. at 250. The Sixth Circuit found that *Browning* "does *not* require a debtor's reservation of claims to name each (potential) defendant and state the factual basis for each (potential) cause of action." *Id*. at 249. Instead, the Sixth Circuit held that "a debtor's reservation is sufficient so long as it enables creditors to (1) identify the claims (or potential claims) at issue and (2) to evaluate whether those claims might provide additional assets for distribution." *Id*. (citing *Browning*, 283 F.3d at 774–75); *see also Harstad v. First Am. Bank*, 39 F.3d 898, 903 (8th Cir. 1994) (noting that the purpose of stating potential claims in the bankruptcy plan is to "ensure creditors know about claims that might enlarge the estate"). Because the debtor identified the counterparty and indicated the forum, the Sixth Circuit determined that it had sufficiently preserved the right to pursue counterclaim such that creditors "knew that there was an ongoing claim and a potential recovery." *In Re Mountain Glacier*, 877 F.3d at 249; *see also In re Antioch Co.*, 456 B.R. 791, 829–31 (Bankr. S.D. Ohio 2011), *report & recommendation adopted*, 2011 WL 3664564 (S.D. Ohio Aug. 12, 2011) (finding the plaintiff

---

[1] The provision in dispute read: "In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under sections 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code." *Browning*, 283 F.3d at 769.

-7-

sufficiently reserved claims in its schedule attached to its reorganization plan that specifically identified almost all of the parties and the causes of action asserted).

Although CCMH's Plan includes a blanket reservation, the Plan also contains statements that preserve tort claims with more specificity. For instance, Section 1.1.22 of the Plan specifically preserves "all Tort Claims," which Section 1.1.106 of the Plan defines, in part, to include "professional negligence claims." (Opp'n at 6.) In addition, Article IX of the Plan disclaims release of "Genesis and its . . . attorneys" and "attorneys . . . of the Debtor" from any claims or causes of action. (Mot. Ex.A at 35, ECF No. 53-1.) Sections 1.1.76, 6.3, 6.4, 7.3.1 of the Plan also refer to proceeds from future tort claims and outline how proceeds from those claims will go toward repayment of debts. (*Id*. at 6–7.) Thus, the present case is unlike *Browning* where the debtor's preservation arguments rested only on a blanket statement. *Cf. D&K Props. Crystal Lake v. Mut. Life Ins. Co. of N.Y.*, 112 F.3d 257, 261 (7th Cir. 1997) (holding that plaintiff's blanket reservation was inadequate to reserve claims in the bankruptcy proceedings); *Groupwell Int'l v. Gourmet Express, LLC*, No. 4:09-CV-00094-M, 2013 WL 309177, at *8 (W.D. Ky. Jan. 25, 2013) (same); *In re G-P Plastics, Inc.*, 320 B.R. 861, 867–68 (E.D. Mich. 2005) (finding the debtor's "general reservation of rights is an insufficient basis upon which to bar the application of the res judicata doctrine").[2] Although Plaintiff in this case does not name a specific defendant like the debtor did in *In Re Mountain Glacier*, Plaintiff expressly reserved claims against a class of defendants, and Plaintiff anticipated professional negligence claims specifically. *See also In re Kelley*, 199 B.R. 698, 704

---

[2] Defendants also cite to *In re SI Restructuring, Inc.*, 714 F.3d 860 (5th Cir. 2013) and *Rossco Holdings, Inc. v. McConnell*, 613 F. App'x 302 (5th Cir. 2015) for the same proposition that Plaintiff must specifically preserve its malpractice claims against Defendants in its Plan or disclosure statement. (Mot. at 14–16.) Although the plaintiffs in both of *Rossco* and *In re SI Restructuring* adequately reserved certain claims, the reserved claims were not the causes of action pending against the defendants in the subsequent cases before the Fifth Circuit Court of Appeals. Therefore, like *Browning*, these two cases are dissimilar to the instant action in which Plaintiff has reserved "professional negligence claims," which are the type of claim at issue in this case.

(B.A.P. 9th Cir. 1996) ("If a confirmed plan expressly reserves the right to litigate a specific cause of action after the confirmation, then res judicata does not apply. . . . On the other hand, if the debtor fails to mention the cause of action in either his schedules, disclosure statement, or plan, then he will be precluded from asserting it postconfirmation."); *In re Kmart Corp.*, 310 B.R. 107, 124 (Bankr. N.D. Ill. 2004) ("[P]lan provisions identifying causes of action by type or category are not mere blanket reservations.") (citing *In re P.A. Bergner & Co.*, 140 F.3d 111 (7th Cir. 1998));; *cf. Kaye v. Carlisle Tire & Wheel Co.*, No. 3:07-00336, 2008 WL 821521, at *2 (M.D. Tenn. Mar. 27, 2008) (finding the plaintiff's claims were barred by res judicata where the plaintiff failed to "identify any of the Plaintiff's new claims" in the debtor's disclosure statement or bankruptcy plan). The Plan also included information about how the proceeds from future litigation would be allocated. Thus, the court finds that creditors would have had enough information to know that there would be potential attorney malpractice claims against Genesis' and Debtor's attorneys and potential recovery. Accordingly, res judicata does not preclude Plaintiff from bringing the malpractice claim against Defendants.

## IV. CONCLUSION

For the foregoing reasons, the court denies Defendants Bricker & Eckler, LLP, and Michael Gire's Motion for Summary Judgment (ECF No. 53) with respect to Counts X and XI of the Complaint.

      IT IS SO ORDERED.

                                        */s/ SOLOMON OLIVER, JR.*
                                        UNITED STATES DISTRICT JUDGE

March 1, 2019