UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CH LIQUIDATION ASSOCIATION LIQUIDATION TRUST, *et al.*, | ) ) ) | Case No.: 5:18 CV 752 |
| Plaintiffs | ) ) | |
| v. | ) ) | JUDGE SOLOMON OLIVER, JR. |
| GENESIS HEALTHCARE SYSTEM, *et al.* | ) ) ) ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Defendant Owen & Manning ("O&M") and Defendant Michael Manning's ("Manning") (jointly, "Defendants") Joint Motion to Dismiss Counts XII and XIII of the Complaint (ECF No. 17). For the following reasons, the court grants Defendants' Motion.

**I. BACKGROUND**

Coshocton County Memorial Hospital ("CCMH" or "Debtor") operated a general, acute care, not-for-profit hospital in Coshocton, Ohio and had a number of primary care and specialty physicians. (Compl. ¶ 15, ECF No. 1) O&M served as CCMH's outside legal counsel and advised CCMH in its relationship with Genesis Healthcare Solutions ("Genesis"), an integrated healthcare delivery system and competitor of CCMH. (*Id*. ¶¶ 17, 50.) Manning was a partner at O&M and acted as "figurehead" counsel for CCMH. (*Id.* ¶¶ 5, 118.) Plaintiff is CH Liquidation Trust and Joseph Oriti in his capacity as Debtor Representative and Liquidation Trustee of the estate of CCMH ("Plaintiff"). On April 3, 2018, Plaintiff initiated this action seeking redress for various injuries

allegedly caused by multiple defendants. Counts XII and XIII of the Complaint name Defendants Manning and O&M, respectively, claiming legal malpractice in their representation of CCMH in its dealings with Genesis. (*Id.* ¶¶ 537–50.)

### A. Factual Background

Plaintiff's legal malpractice claims arise out of three incidents. The first incident involves a management services agreement (the "Management Agreement") that CCMH entered into with Genesis in 2012. (*Id.* ¶ 2.) According to Plaintiff's Complaint, Genesis sought a relationship with CCMH to capture and control patient market share in a six-county region, which overlapped with CCMH's primary service area. (*Id.* ¶¶ 46–53, 87.) In 2012, after learning that CCMH was facing severe financial difficulties, Genesis and CCMH's then CEO, Robert Miller ("Miller"), began discussing a proposal in which Genesis would take over management of CCMH. (*Id.* ¶ 82.) These discussions culminated in the signing and execution of the Management Agreement in June 2012. (*Id.* ¶¶ 136, 163.) O&M first received a draft of the Management Agreement on June 5, 2012. (*Id.* ¶ 128.) Manning reviewed the draft but did not share his comments with the CCMH Board. (*Id.* ¶ 129.) Instead, Manning emailed Miller with his comments and questions regarding the Management Agreement on June 7, 2012. (*Id.*) Although Manning suggested sharing his concerns with the CCMH Board, Miller never sent the comments to the CCMH Board. (*Id.* ¶ 129, 131–34.) Plaintiff contends that Manning failed to follow up despite knowing that Miller, who would become employed by Genesis after the execution of the Management Agreement, had a conflict of interest in representing CCMH in the negotiations. (*Id.* ¶¶ 134–38). Accordingly, Plaintiff claims that Manning failed to fully inform or advise the CCMH Board of his concerns with the Management Agreement. (*Id.* ¶ 135.)

The second incident arises out of a line of credit that Genesis provided to CCMH. On August 21, 2012, Genesis and CCMH finalized a loan agreement ("Loan Documents") in which Genesis would provide CCMH with up to $5 million. (*Id*. ¶ 167.) CCMH then drew it down to $4 million. (*Id*.) Genesis' attorneys drafted the Loan Documents and the board resolution for CCMH to approve the documents. (*Id*. ¶ 173.) Miller and Richard Wood, the acting CFO of CCMH at the time, who became employees of Genesis following the execution of the Management Agreement in June 2012, negotiated the Loan Documents on behalf of CCMH. (*Id*. ¶ 170.)

Plaintiff's Complaint states that Manning purported to represent CCMH during the negotiations, but Plaintiff maintains that Manning merely summarized his understanding of the Loan Documents after being sent a draft from Genesis' attorneys, and stated, "I do not have any issues with these documents." (*Id*. ¶¶ 174–75.) Accordingly, Plaintiff claims that Manning did not properly advise CCMH on the legal consequences of the language or terms of the Loan Documents or provide any suggestions, edits, or comments. (*Id*. ¶¶ 176–77.) In addition, Plaintiff alleges that Manning failed to express concern about the conflict of interest of the employees who represented CCMH during the negotiation of the Loan Documents. (*Id*. ¶ 177.)

The third situation involves the alleged dual representation of Genesis and CCMH by Genesis' counsel Bricker & Eckler, LLP ("Bricker"). In 2014, Genesis sought to provide laboratory services to CCMH. To further this goal, Genesis tasked Bricker with preparing a laboratory services agreement ("Lab Services Agreement") between Genesis and CCMH on behalf of both parties. (*Id*. ¶ 345.) Under the Lab Services Agreement, Genesis would provide day-to-day operations for the on-site laboratory at CCMH and provide for off-site laboratory services in exchange for CCMH paying Genesis. (*Id*. ¶ 342.) On July 16, 2014, Bricker emailed the CEO of CCMH at the time, Lori Wildi

("Wildi"), a conflict of interest waiver so that Bricker could represent both CCMH and Genesis in the negotiation and execution of the Lab Services Agreement, which Wildi signed. (*Id*. ¶¶ 347–48.) The Lab Services Agreement was executed on December 16, 2014. (*Id.* ¶ 362.) Plaintiff alleges that Manning failed to raise any concern of Bricker's dual representation during the negotiation or drafting of the Lab Services Agreement. (*Id.* ¶ 376.)

On September 10, 2014, the CCMH Board met to discuss, among other things, the recommended next steps in the relationship between CCMH and Genesis. (*Id*. ¶ 364.) Prior to this meeting, Genesis' CEO asked Gire, a partner at Bricker, to represent CCMH at the meeting. (*Id.* ¶¶ 5, 364–65.) Manning was also present at the Board meeting. (*Id*. ¶ 368.) However, Manning did not raise concern with Gire's conflict in representing both Genesis and CCMH at the meeting. (*Id.* ¶ 368.) After the Board meeting, Manning and Gire continued to attend board meetings, including certain closed session meetings. (*Id.* ¶ 377.) Plaintiff states that Bricker was still performing legal services for CCMH as late as May 4, 2015. (*Id.* ¶ 378.) Plaintiff claims that Manning did not properly advise the CCMH Board regarding Bricker's dual representation of Genesis and CCMH during this time. (*Id*. ¶ 368.)

**B. Procedural History**

On June 30, 2016, CCMH filed a voluntary petition (the "Petition") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio. (*Id.* ¶ 30.) CCMH continued to operate its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 after the Petition date. (*Id.* ¶¶ 30–31.) On October 3, 2016, the Bankruptcy Court entered an order approving the Debtor's sale of substantially all of its assets to Prime Healthcare Foundation-Coshocton, LLC and Prime Healthcare Foundation, Inc. The sale transaction closed on or about

October 31, 2016. (*Id.* ¶¶ 32–33.) On July 12, 2017, the Bankruptcy Court entered an order confirming the First Amended Joint Chapter 11 Plan of Liquidation for Coshocton County Memorial Hospital Association n/k/a CH Liquidation Association of the Debtor and the Official Committee of Unsecured Creditors (the "Plan"). Under the Plan, Oriti was appointed as the Debtor Representative and Liquidation Trustee. The effective date of the Plan occurred on August 1, 2017. (*Id.* ¶¶ 34–36.) Plaintiff filed the Complaint in the present action on April 3, 2018. On May 8, 2018, Defendants filed the pending Joint Motion to Dismiss, arguing that (1) malpractice counts filed against them are time-barred and (2) the Complaint, as to them, fails to state a plausible claim for relief. Plaintiff submitted a Response on June 6, 2018 and Defendants replied on June 20, 2018 (ECF Nos. 22, 39).

## II. LEGAL STANDARD

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). See *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009) clarified the law regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a Complaint need not contain

"detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, further explained the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. LAW AND ANALYSIS

#### A. Time Bar

Defendants argue that Plaintiff has failed to state a claim upon which relief can be granted because the action was not brought within the statutory period. Legal malpractice claims must be commenced within one year after the cause of action accrued. Ohio Rev. Code § 2305.11. Accrual occurs at the later of either (1) the occurrence of "a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney" or (2) "when the attorney-client relationship for that particular transaction or undertaking terminates . . ." *Zimmie v. Calfee*, 43 Ohio St. 3d 54, 58 (1989). With respect to legal malpractice claims, "an act or event that notifies a reasonably prudent client that his attorney has caused harm because of an improper act is

'cognizable.'" *Spence v. McGill*, 622 N.E.2d 7, 15 (Ohio Ct. App. 1993). The statute of limitations starts to run even if the client does not know all of the details related to the injury. *Halliwell v. Bruner*, No. 76933, 77487, 2000 WL 1867398, at *7 (Ohio Ct. App. 2000).

Additionally, § 108 of the Bankruptcy Code provides that "if applicable nonbankruptcy law…fixes a period within which the debtor may commence an action, and such action has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—(1) the end of such period . . . or (2) two years after the order for relief." 11 U.S.C. § 108; *see also* 11 U.S.C. § 301(b) (noting that the date of the order of relief is based on the date a voluntary bankruptcy petition is filed). Debtor filed the bankruptcy petition on June 30, 2016. Plaintiff commenced this action on April 3, 2018, within the two-year period after the bankruptcy petition was filed. Therefore, the question to be addressed is whether the statute of limitations ran before the filing of the bankruptcy petition, thus preventing Plaintiff from taking the benefit of the § 108 tolling provision.

*1. Applicability of § 108 of the Bankruptcy Code*

Manning first argues that § 108 of the Bankruptcy Code does not apply to Plaintiff because Plaintiff is a liquidating trustee and not a bankruptcy trustee. According to Defendants, the words "trustee," when used in the Bankruptcy Code, refers only to a Bankruptcy Trustee. The court first notes that other courts, including those in Ohio, have squarely rejected Defendants' argument that "trustee" in § 108 cannot refer to a liquidating trustee. *See, e.g.*, *In re Great Lakes Comnet, Inc.*, 558 B.R. 1, 16–18 (Bankr. W.D. Mich. 2018); *Antioch Litigation Trust v. McDermott Will & Emery LLP*, 500 B.R. 755, 760–64 (Bankr. S.D. Ohio 2013); *In re Greater Se. Community Hospital Corp.*, 333 B.R. 506, (Bankr. D.D.C. 2005) ("In other words, § 108(a) ought to apply when there has been a confirmed plan vesting identified claims in a successor who is acting at the behest of creditors. . .

."). Nevertheless, Defendants rely on *Roach v. Option One Mortgage Corp.*, which states that "§ 108(a)'s plain language only explicitly grants the benefit of its extension to a bankruptcy trustee." 598 F. Supp. 2d 741, 755 n.23 (E.D. Va. 2009), *aff'd*, 332 F. App'x 113 (4th Cir. 2009). However, Defendants take this quote out of context. In applying § 108, the court in *Roach* was attempting to distinguish a bankruptcy trustee from a bankruptcy debtor, and did not comment on the distinction between a liquidating trustee and a bankruptcy trustee. *Id*. (noting that § 108's language only "grants the benefit of its extension to a bankruptcy trustee and not to a bankruptcy debtor"). Consequently, Plaintiff's claim is not comparable to the claims in *Roach*.

### 2. Statute of Limitations Accrual Dates

For Plaintiff to maintain its legal malpractice claim with its one-year statute of limitations, Plaintiff must have pled plausible factual allegations to show that the cause of action accrued no earlier than June 30, 2015. However, Defendants argue that even if Plaintiff is entitled to the benefit of § 108, the malpractice claim accrued prior to June 30, 2015, and, thus, the statute of limitations had run.

### a. Management Agreement Allegation Under Cognizable Event Test

With respect to the Management Agreement allegation, Defendants contend that CCMH had actual and constructive notice of the alleged malpractice when Manning sent his comments about the draft Management Agreement to Miller in June 2012. (Mot. 7, ECF No. 17-1.) Thus, because the cognizable event can occur when a client has "constructive knowledge of facts, rather than actual knowledge of their legal significance," Defendants argue that the statute of limitations ran on Plaintiff's malpractice claim for the Management Agreement allegation in June 2013, which was well before the June 30, 2016 petition date. *F.D.I.C.*, 78 F.3d at 1107; *see also In re National Century Fin. Enterprises, Inc.*, 783 F. Supp. 2d 1003, 1015 (S.D. Ohio 2011) ("A principal is

generally liable for the knowledge received and the conduct committed by an agent within the scope of employment."); *First Nat'l Bank of New Bremen v. Burns*, 103 N.E. 93, 95 (Ohio 1913) ("The agent when duly authorized to act stands in the shoes of his principal for the purposes of the corporation. . . .").

Plaintiff argues that the CCMH Board could not have known about Manning's malpractice until the Chapter 11 proceedings because Miller, who Plaintiff claims had a conflict of interest, did not relay Manning's comments to the CCMH Board, and Manning did not follow up with the CCMH Board directly. (Opp'n 14, ECF No. 22.) In other words, Plaintiff argues that the cognizable event occurred some time after the bankruptcy petition was filed because CCMH could not have known or discovered the alleged malpractice until it conducted investigations during the Chapter 11 proceedings.

Plaintiff's argument rests on the assumption that Miller's conflict of interest made him an inappropriate agent for Manning to have conveyed concerns to, and that Manning should have known that Miller was a conflicted employee that could not have been trusted to relay critical comments to the CCMH Board. However, these legal conclusions are unsupported by plausible factual allegations. First, the Complaint states that Manning was not privy to the e-mail exchange between Genesis representatives and Miller when they decided not to share Manning's comments with the CCMH Board. (Compl. ¶¶ 131–34.) Accordingly, Manning had no reason to suspect that Miller would not convey his comments to the CCMH Board. Second, Miller's employment with Genesis was transparent to both Manning and the CCMH Board. The Management Agreement clearly stated that Genesis could employ key CCMH management personnel, which, according to the Complaint, included CCMH's CEO and CFO. (*Id*. ¶ 182.) The Management Agreement also provided that these key officers from CCMH could work simultaneously for Genesis in other

-9-

capacities. (*Id*. ¶ 185.) Finally, the court infers that CCMH Board members were able to view the Agreement prior to voting to approve it. (*Id*. ¶¶ 100, 163.) Thus, the CCMH Board and Manning were aware that Miller and other CCMH employees would be employed by Genesis, and of the scope of their dual employment, as outlined in the Management Agreement. (*See also id*. ¶ 119) (noting that at Genesis' Board meeting, Genesis' CEO stated that "Miller would owe loyalty to Genesis through his new role as CEO of CCMH while employed by Genesis" and that he would be "'accountable to both CCMH Board of Directors and Genesis Administration.'") Thus, the Complaint does not contain sufficient factual allegations to support an inference that Manning should have known that Miller was an unsuitable CCMH representative for receiving Manning's legal advice about the Management Agreement. Accordingly, for the purposes of establishing a plausible statute of limitations accrual date, the court finds that Miller's knowledge is imputed to the CCMH Board, and that time began to run on the malpractice claim on June 7, 2012.

Thus, the court finds that under the cognizable event test, Plaintiff would be time-barred from bringing its legal malpractice claims with respect to the Management Agreement allegation.

### b. Allegations Under Termination Prong

Plaintiff does not address whether there was a cognizable event with respect to the Loan Documents or dual representation allegations. Instead, Plaintiff relies on the termination prong, asserting an argument to establish the accrual date generally, for all allegations of malpractice. Plaintiff contends that, under the termination prong, its malpractice claims did not accrue until November 2015, which is the date that Genesis and CCMH suspended the Management Agreement.[1]

---

[1] Plaintiff also states that it has evidence that can establish that Manning was at CCMH Board meetings as late as December 14, 2015. (Opp'n at 15.) However, Plaintiff has only introduced this statement in its Opposition to Defendants' Motion. Because Defendants bring their motion under Rule 12(b)(6), which requires the court to apply the standard as to the pleadings, it is not appropriate for the court to consider supplemental factual allegations at this stage. In any case, the December 14, 2015 date is irrelevant for the same reasons as Plaintiff's November 15, 2015 date,

-10-

(Opp'n at 15.) Plaintiff maintains that this is the proper termination date because it relates to the last date that Manning represented CCMH in its dealings with Genesis. (*Id*.) Thus, Plaintiff argues that the malpractice claim, as it relates to each of the allegations, did not accrue until November 2015.

Defendants contend that their representation of CCMH with respect to each of the three "particular transactions" terminated prior to June 2015. (Reply 4–5.) In particular, Defendants assert that the attorney-client relationship for the dual representation allegation terminated on May 4, 2015, which is the latest date that Plaintiff alleges that Bricker performed legal services for CCMH. (Reply at 4, ECF No. 39.) Thus, Defendants maintain that this is also the latest date that Plaintiffs have alleged that Bricker could have represented both Genesis and CCMH. According to Defendants, if the dual representation allegation accrued on May 4, 2015, then time would have run on May 4, 2016. (Reply at 4.) Thus, Defendants argue that Plaintiff's malpractice claims with respect to dual representation are barred by the statute of limitations.

The termination prong requires the statute to run when the attorney-client relationship for the particular transaction or undertaking at issue terminates. *See Zimmie*, 43 Ohio St. 3d at 58; *see also Capital City Energy Group, Inc. v. Kelley Drye & Warren, LLP*, 975 F. Supp. 2d 842, 852–53 (S.D. Ohio 2013) ("[U]nder this 'particular transaction' rule, the statute of limitations may begin to run as to a particular transaction, even though the attorney may continue to represent the client on other matters.") When an attorney revisits a transaction or undertaking for a client, the attorney-client relationship related to that transaction or undertaking may not be considered terminated. *See Capital City Energy Group, Inc.*, 975 F. Supp. 2d at 853–54 ("It cannot be that, as a matter of law, representation terminates at the time a transaction closes; indeed, attorneys regularly revisit ostensibly closed transactions to fix mistakes and make alterations."). However, the particular

---

discussed *infra*.

transaction or undertaking does not encompass dealings that are of a general nature. *F.D.I.C. v. Alexander*, 78 F.3d 1103, 1109–10 (6th Cir. 1996) ("The Supreme Court of Ohio, in adopting this rule, expressly rejected an argument that 'continued general representation' should toll the statute of limitations.") (internal citations omitted). Plaintiff does not allege that Defendants attempted to "fix, alter or renegotiate" the Management Agreement, Loan Documents, or any dealings related to the dual representation allegations. Nor does Plaintiff claim that Defendants' alleged malpractice is based on CCMH's entire relationship with Genesis from June 2012 to November 2015. Plaintiff's allegations point to specific events. Yet Plaintiff has not pled any factual allegations to show that these incidents of malpractice were ongoing through November 2015. Thus, Plaintiff's argument that the termination date should be based on the latest date that Manning represented CCMH with respect to dealings with Genesis is too generalized. Consequently, the court finds that Plaintiff has not alleged sufficient factual allegations to support that the malpractice claims, based on each of the three allegations, accrued in November 2015.

Instead, the court credits Defendants' proposed termination date under the termination prong, with respect to the dual representation allegations. Defendants assert that Manning's relationship with CCMH terminated with respect to the dual representation claims when Bricker stopped representing CCMH. (Mot. at 9; Reply at 8.) Plaintiff's Complaint states that Bricker was performing legal services for CCMHs "as late as May 4, 2015." (Compl. ¶ 378.) Accordingly, the court finds that May 4, 2015 is the appropriate termination date with respect to the dual representation allegations. Thus, the statute of limitations ran on May 4, 2016, and Plaintiff's legal malpractice claims based on dual representation are time-barred.

By the same logic, Manning's representation of CCMH during the negotiations of the Management Agreement and the Loan Documents would have terminated once the Management

Agreement and the Loan Documents were executed. The Management Agreement was executed on June 18, 2012, so time would have run on the Management Agreement claim on June 18, 2013. (Compl. ¶ 163.) Since CCMH and Genesis executed the Loan Documents on August 21, 2012, the statute of limitations would have run with respect to the Loan Documents allegation in August 2013. (Compl. ¶ 169.) Thus, the statute of limitations bars Plaintiff from bringing malpractice claims with respect to the Management Agreement and Loan Documents allegations.

### B. Legal Malpractice

Because the court has found, for the foregoing reasons, that Plaintiff's legal malpractice claims are barred by the statute of limitations, the court does not consider Defendants' arguments regarding the sufficiency of Plaintiff's pleadings.

### IV. CONCLUSION

For the foregoing reasons, the court hereby grants Defendants' Joint Motion to Dismiss Counts XII and XIII of the Complaint (ECF No. 17).

.

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

March 28, 2019