UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| CH LIQUIDATION ASSOCIATION | ) | Case No.: 1:18 CV 752 |
| LIQUIDATION TRUST, *et al.*, | ) | |
| | ) | |
| Plaintiffs | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| GENESIS HEALTHCARE | ) | |
| SYSTEM, *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |


Currently pending before the court in the above-captioned case is Defendant Blue & Co.'s

Motion to drop it from the action or, in the alternative, to sever the claims against it ("Motion")

(ECF No. 99). For the reasons that follow, the court denies Defendant's Motion.

## I. BACKGROUND

In the aftermath of the financial collapse of Coshocton Memorial Hospital Association

("CCMH"), Plaintiff CH Liquidation Association Liquidation Trust and Joseph Oriti, in his capacity

as Debtor Representative and Liquidation Trustee of the estate of CCMH ("Plaintiff"), filed a

Complaint seeking redress for the injuries allegedly caused by eight Defendants (ECF No. 1).

Plaintiff claims, among other things, that Defendants' misconduct led CCMH to file for Chapter 11

protection and/or deepened CCMH's insolvency. (Compl. ¶ 7.) Count IX of the Complaint names

Defendant Blue & Co. ("Blue" or "Defendant"), claiming accountant and professional malpractice in the conduct of audits performed for CCMH for the years 2012 and 2013. (*Id.* ¶¶ 514–22.)

## A. Factual Background

Coshocton Memorial Hospital Association operated a general acute care not-for-profit hospital in Coshocton, Ohio, as well as a number of primary care and specialty physician clinics. (*Id.* ¶ 15.) As early as the fall of 2008, at a time of financial difficulty for CCMH and other rural hospitals, CCMH began a complicated relationship with Genesis Healthcare System ("Genesis"), a healthcare provider located in the same region as CCMH. Although the relationship would start with the CEO of Genesis and the CEO of CCMH, each serving as equals on a three-member not-for-profit healthcare alliance board, Genesis would later control the decisions of CCMH pursuant to a Management Agreement executed in 2012. (*Id.* ¶¶ 57–64, 90–121.) Eventually, the relationship ended when CCMH filed for Chapter 11 protection in 2016.

Plaintiff's twenty-count Complaint arises from the CCMH-Genesis relationship. In the Complaint, Plaintiff alleges a range of anti-trust and tort claims against CCMH's executive leadership, Genesis's executive leadership, their respective legal counsel, and, most relevant to this pending Motion, CCMH's financial auditor Blue. Plaintiff claims that Blue committed accountant and professional malpractice when Genesis influenced it to remove the following language from its audit of CCMH's 2012 and 2013 financial statements:

> The accompanying consolidated financial statements have been prepared assuming [CCMH] will continue as a going concern. As discussed in Note 4 to the consolidated financial statements, [CCMH] did not meet certain covenants related to the debt outstanding at December 31, 2013. The bank may demand repayment of the related debt, though no such demand has been made. In addition, [CCMH] had overdrawn their cash and cash equivalents as of December 31, 2013 and the 1999 Revenue Bonds letter of credit expires on

-2-

> September 15, 2014 resulting in the associated debt to be classified as current. These conditions raise substantial doubt about its ability to continue as a going concern. The financial statements do not include any adjustments that might result from the outcome of this uncertainty. Our opinion is not modified with respect to this matter.

(*Id.* ¶¶ 300–312.) This language, known as a going concern qualification, is required when information from the audit would lead an auditor to have substantial doubt that the company can continue for a year from the end of the period of the financial statement being audited. *See In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 413 (S.D.N.Y. 2010). Plaintiff claims that as a result of pressure from Genesis, Blue removed the going concern qualifications. (Compl. ¶¶ 5, 310.) In so doing, Plaintiff alleges that Blue failed to maintain an independent opinion, and made material omissions in the audit report in violation of professional auditing standards. (*Id.* ¶¶ 515–22.) Because of the omitted language, Plaintiff states that CCMH was able to obtain waivers and extensions of letters of credit. (*Id.* ¶¶ 310, 521.) Plaintiff argues that the ability to receive credit and secure bonds, however, only prolonged CCMH's inevitable collapse and deepened CCMH's insolvency. (*Id.* ¶ 311.)

**B. Procedural History**

On June 30, 2016, CCMH filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio. (Compl. ¶ 30.) CCMH continued to operate as debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 after the Petition Date. (*Id.* ¶¶ 30–31.) On October 3, 2016, the Bankruptcy Court entered an order approving CCMH's sale of substantially all of its assets, and the sale transaction closed on October 31, 2016. (*Id.* ¶¶ 32–33.) On July 12, 2017, the Bankruptcy Court confirmed the Chapter 11 plan (the "Plan"), and the Plan became effective on August 1, 2017. (*Id.* ¶¶ 34, 36.) Plaintiff filed the

Complaint in the present action on April 3, 2018. (ECF No. 1.) Relevant to this Motion, Plaintiff alleged breach of fiduciary duty claims against Genesis, its President and CEO, Matthew Perry ("Perry"), and Robert Miller ("Miller"), the former CEO of CCMH. (Compl. ¶¶ 451–49.) Plaintiff also alleged attorney malpractice claims against Bricker & Eckler, LLP ("Bricker") and Michael Gire ("Gire"), a partner with the firm. (*Id.* ¶¶ 523–36.)

On January 13, 2020, Blue filed the Motion considered herein, requesting the court drop it from the action, or alternatively, sever the claims against it. (ECF No. 99.) Plaintiff filed its Opposition on January 31, 2020. (ECF No. 104.) Blue filed its Reply on February 14, 2020. (ECF No. 114.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 21, in the event of misjoinder, the court may, on just terms, "add or drop a party" or "sever any claim against a party." *See Mann v. Mohr*, No. 18-4019, 2020 WL 398532, at *3 (6th Cir. Jan. 23, 2020). Misjoinder occurs when a party fails to satisfy the conditions for permissive joinder under Rule 20. *See Walls v. Host Int'l, Inc.*, No. 1:15-CV-00564, 2015 WL 4644638, at *1 (N.D. Ohio Aug. 4, 2015). Misjoinder alone, however, is not a ground for dismissing an action. *See Jackson v. Berean*, No. 19-1583, 2019 WL 6208147, at *2 (6th Cir. Nov. 19, 2019) (citing Fed. R. Civ. P. 21). District courts have sound discretion in deciding how to resolve misjoinder issues. *Kitchen v. Heyns*, No. 16-1243, 2016 WL 11618616, at *1 (6th Cir. Nov. 21, 2016) (holding "the manner in which the court handles misjoinder lies within the court's sound discretion").

Federal Rule of Civil Procedure 20(a)(2) provides that defendants may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). As the Sixth Circuit has held, "[i]f the same issues of fact would determine both claims, they arise out of the same transaction or occurrence, but if the proof of one claim would have no connection with the proof of the other, the claims do not arise out of the same transaction or occurrence." *Moore v. Mich. Dep't of Corr.*, No. 17-6107, 2018 U.S. App. LEXIS 25325, at *4 (6th Cir. Sep. 5, 2018) (citing *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, It. v. Alexander*, 414 F.2d 143, 151 (6th Cir. 1969)). Many courts have found that "claims arise our [sic] of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and the court." *Walls*, 2015 WL 4644638, at *3. The "'series of transactions or occurrences' analysis is a flexible standard that 'enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief . . . to be tried in a single proceeding.'" *Id.* (internal citations omitted). Because there is no bright line rule for making this determination, a case-by-case analysis is needed. *Id.*

In determining whether to sever claims, the court considers:

> (1) whether the claims arise out of the same transaction or occurrence;
>
> (2) whether the claims present some common questions of law or fact;
>
> (3) whether settlement of the claims or judicial economy would be facilitated;
>
> (4) whether prejudice would be avoided if severance were granted; and

-5-

5) whether different witnesses and documentary proof are required for

separate claims.

*Mann*, 2020 WL 398532, at *3 (quoting *Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir.

2018)). The court also considers "principles of fundamental fairness" and "resulting undue delay."

*Spence v. Dexcom, Inc.*, No. 3:18-CV-0369, 2019 WL 302504, at *2 (M.D. Tenn. Jan. 23, 2019)

(citing *Reynolds v. Merck Sharp & Dohme Corp.*, Case No. 3:15 cv 397, 2016 WL 3090951, at *2

(N.D. Ohio June 2, 2016)). The party requesting the court to sever a claim has the burden to show

"that severance is required to avoid prejudice or confusion and to promote the ends of justice."

*Spence*, 2019 WL 302504, at *2. The court has "virtually unfettered discretion" in deciding whether

to sever claims. *Id.*

### III. LAW AND ANALYSIS

Blue requests the court to issue an order dropping it from this action, or alternatively,

severing Plaintiff's claims against it. (Mot. at PageID #2125, ECF No. 99.) Plaintiff urges the court

to deny Defendant's Motion. (Opp'n at PageID #2162, ECF No. 104.) The court will address each

of their arguments in turn.

#### A. Same Transaction, Occurrence, or Series of Transactions or Occurrences

First, Defendant argues that Plaintiff's Complaint fails to meet the first part of Rule

20(a)(2)'s joinder test. (Mot. at PageID #2129–30.) *See* Fed. R. Civ. P. 20(a)(2)(A) (providing that

persons may be joined as defendants if asserted against them is any right to relief arising out of the

"same transaction, occurrence, or series of transactions or occurrences"). Blue asserts that "the

transactions at the heart of the different claims [against the other defendants] are fundamentally

different" from the accountant malpractice claim that Plaintiff asserted against Blue. (Mot. at

-6-

PageID #2130.) But this argument ignores the fact that the breach of fiduciary duty claims and/or attorney malpractice claims against the other defendants, as well as the accountant malpractice claim against Blue, all involve a determination as to whether the defendants' breach of their respective duties contributed to CCMH's injuries. Further, while the claim against Blue only refers to its conduct pertaining to the 2012 and 2013 audits, and thus does not extend until 2016 like the conduct alleged against the other defendants, there still remains a question of whether Blue's conduct even for this more limited period may have contributed to CCMH's demise.

Discovery for the claim against Blue will necessarily require an inquiry into the nature of the Genesis-CCMH relationship and Blue's connection to that relationship. Indeed, Plaintiff maintains that Genesis was actively involved in the decision to remove the going concern qualification from the audits that Blue prepared for CCMH, as Genesis allegedly pressured Blue to remove the qualifications. (Compl. ¶¶ 5, 310, 567.) These allegations suggest that Genesis influenced the accountant-client relationship between Blue and CCMH. And this factual issue is relevant to the claims that are raised against Blue and Genesis, and will be intertwined with a determination as to whether Genesis, Blue, and/or the other defendants caused CCMH's insolvency. Thus, the court finds that the claims in this case are sufficiently related for purposes of Rule 20. *See Walls*, 2015 WL 4644638, at *3 (finding that Rule 20 only prevents joinder of "wholly unrelated" claims).

Defendant cites several cases where courts declined to exercise pendent jurisdiction and/or supplemental jurisdiction over legal malpractice claims in support of its assertion that the claim against it arises from separate transactions and occurrences than the other claims in this case. (Mot. at PageID #2131–32 (citing *Hunter v. Abi*, No. 2:13-CV-661-WKW, 2014 WL 495359 (M.D. Ala.

Feb. 5, 2014); *Newsome v. Gallacher*, No. 11-CV-140-GKF-PJC, 2014 WL 2533402 (N.D. Okla. June 5, 2014).) But these cases offer Defendant no support because, unlike those cases, Plaintiff's claims against Blue and the other defendants are factually related. *See, e.g.*, *Hunter*, 2014 WL 495359, at *9–10 (finding there was no basis to exercise supplemental jurisdiction over a legal malpractice claim against a defendant attorney and defendant law firm because the legal malpractice claim "require[d] proof of an entirely separate set of facts unrelated to the other defendants' alleged misconduct"); *Newsome*, 2014 WL 2533402, at *10 (declining to exercise pendent jurisdiction over the plaintiff's legal malpractice claims because, among other reasons, such claims "d[id] not arise from the same core facts" as the breach of fiduciary duty and aiding and abetting claims). In this case, the resolution of Plaintiff's claims against Blue and the other defendants require a determination as to whether defendants contributed to CCMH's insolvency.

In support of its position, Defendant also cites a case from this district court, which found that a legal malpractice claim was misjoined under Rule 20. (Mot. at PageID #2131 (citing *Phillips v. Knoll Pharm. Co.*, No. 5:03-cv-8044, 2003 U.S. Dist. LEXIS 28620, at *16 (N.D. Ohio Sep. 4, 2003).) But this case is also distinguishable. In *Phillips*, multiple plaintiffs filed suit against multiple unrelated physician defendants who prescribed Meridia to them. *See Phillips*, 2003 U.S. Dist. LEXIS 28620, at *2–3. This drug allegedly caused the plaintiffs cardiovascular and cerebrovascular injuries. *Id.* The plaintiffs also sued the pharmaceutical companies (the "pharmaceutical defendants") that manufactured and marketed Meridia. *Id.* at *3. The court dropped the claims against the physician defendants after determining that those defendants were non-diverse and were dispensable parties. *Id.* at *13. The court also determined that even though the physician defendants did not consent to the removal, it was not necessary to remand the claims against the pharmaceutical

defendants.[1] In reaching this conclusion, the court found that the claims against the physician defendants, which concerned their prescribing Meridia to the plaintiffs, involved a "completely separate and independent transaction" from the remaining claims against the pharmaceutical defendants, which concerned the design, manufacture, promotion, and marketing of Meridia. *Id.* at *17. Thus, the court found that because the physician defendants were non-diverse and misjoined, the fact that they did not consent to the removal did not require remand. *Id.*

Unlike *Phillips*, however, Plaintiff's claims against Blue and the other defendants do not arise from completely separate and independent transactions. All of Plaintiff's claims involve Genesis's alleged "strategic plan" to capture and control the patient market share in the region, and its alleged targeting CCMH to accomplish this plan. (Compl. ¶¶ 46, 51.) As part of this plan, Plaintiff maintains that Genesis pressured Blue to remove the going concern qualification from the audits that Blue prepared for CCMH, and that Blue was aware of Genesis's financial stake in the outcome of the audits. (*See id.* ¶¶ 5, 310, 567.) There is a clear relation between the claim against Blue and the claims against the other defendants. Indeed, as explained above, Plaintiff's claims against the other defendants, as well as the claim against Blue, all involve a determination as to whether the defendant's breach of their respective duties contributed to CCMH's insolvency and bankruptcy.

Furthermore, none of the cases that Blue cites stand for the proposition that malpractice claims *per se* cannot be properly joined to other claims or that malpractice claims can never arise

---

[1]    The Sixth Circuit has held that all served defendants must join in the petition for removal. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 532–33 (6th Cir. 1999).

-9-

out of the "same transaction, occurrence, or series of transactions or occurrences" under Rule 20. Consequently, the court finds that the Complaint sufficiently demonstrates that the claim against Defendant arises out of the "same transaction, occurrence, or series of transactions or occurrences" as the other claims in this case. *See* Fed. R. Civ. P. 20(a)(2)(A). Therefore, Plaintiff has satisfied the first part of Rule 20(a)(2).

### B. Any Question of Law or Fact Common to All Defendants

Second, Blue contends that there are no common questions of law between the accountant malpractice claim asserted against it and the other claims in this case. (Mot. at PageID #2133.) In so arguing, Blue maintains that the breach of fiduciary duty claims against Genesis, Perry, and Miller, and the attorney malpractice claims against Bricker and Gire, have no common elements with the claim against Blue. (*Id.*) But again, this argument ignores the fact that the claims against Blue and the other defendants each involve a determination of whether their breach of their respective duties to CCMH jointly or severally caused CCMH's injuries. Thus, as Plaintiff points out, there are factual and legal questions common to all defendants in this case. (*See* Opp'n at PageID #2178, ECF No. 104 (arguing that "the same question of fact permeates the Complaint and is common to all defendants – did each Defendant succumb to pressure from Genesis and fail to adequately carry out its professional responsibilities to CCMH (and to what extent did each, in whole or in part, contribute to CCMH's financial collapse)?").)

Defendant also maintains that "even if there is some factual overlap [between all of the claims in this case], that overlap is insufficient for joinder to be proper." (Mot. at PageID #2133 (citing *Bojorquez v. Abercrombie & Fitch, Co.*, 193 F. Supp. 3d 1117, 1129 (C.D. Cal. 2016) ("these purported common questions of fact are too minimal to establish any meaningful link between the

two types of claims")).) But in *Bojorquez*, a case involving claims brought under the Fair Labor Standards Act, the court was not considering whether joining defendants was proper, it was considering whether the joinder of multiple plaintiffs was proper. *See Bojorquez*, 193 F. Supp. 3d at 1129. Though all of the plaintiffs worked for the defendant, *see id.* at 1121, the court found that some of their claims were distinct and completely unrelated, *see id.* at 1128. One plaintiff asserted reporting time claims involving the defendant's failure to pay its employees for time spent calling into the store prior to work to receive instruction on whether they were required to work that day. *Id.* The other plaintiffs brought clothing and footwear claims involving the defendant's alleged policy requiring its employees to purchase and wear its brand-clothing and footwear without reimbursing the employees for their costs. *Id.* In dismissing the reporting time claims, the court concluded that those claims "contain[ed] little, if any factual similarity" to the clothing and footwear claims. *Id.* at 1128. As explained above, however, the claims in this case are factually similar in that they all involve the defendants' relationship to Genesis and whether their actions deepened CCMH's financial problems and caused its bankruptcy. Further, Plaintiff's claims against Genesis and Blue are factually similar as both will require a determination as to whether Genesis pressured and/or influenced Blue to remove the going concern qualification from the 2012 and 2013 audit reports. Therefore, the court finds that Plaintiff has satisfied the second part of Rule 20(a)(2)'s joinder test.

### C. Whether Severance Would Achieve a Just Result

As explained above, the court finds that Plaintiff has satisfied both parts of Rule 20(a)(2)'s joinder test. As a result, the court need not consider whether the claims should be severed under Rule 21. Nevertheless, the court finds that severance would not be appropriate because it would not achieve a just result. *See* Fed. R. Civ. P. 21. Indeed, Plaintiff has alleged claims that link all of the

-11-

defendants in this case to CCMH's financial problems and bankruptcy. Though the court acknowledges that different witnesses, possibly including experts, will be needed to establish the relevant standards of care that each defendant owed to CCMH, this fact does not persuade the court that severance is appropriate. If the claims were severed, there would still be a need to call some of the same witnesses and present some of the same evidence during the separate trials regarding the nature of Defendant's relationship with Genesis and the extent to which it may have contributed to CCMH's insolvency and bankruptcy. For example, the separate trials would both require an inquiry into whether Genesis pressured Blue to remove the going concern qualification from the audits. Furthermore, the court finds that joinder of the defendants in this case would not create prejudice, expense, or delay. *See Spence*, 2019 WL 302504, at *2. Therefore, the court declines to sever the claim against Blue from the other claims in this case.

## IV. CONCLUSION

For the foregoing reasons, the court denies Defendant's Motion (ECF No. 99).

IT IS SO ORDERED.

*/s/ SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

June 2, 2020

-12-