UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CH LIQUIDATION ASSOCIATION LIQUIDATION TRUST, *et al.*, | ) ) ) | Case No.: 1:18 CV 752 |
| Plaintiffs | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| GENESIS HEALTHCARE SYSTEM, *et al.*, | ) ) ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Defendants Bricker & Eckler, LLP and Michael Gire's (collectively, "Defendants") Motion to drop them from the action or, in the alternative, to sever the claims against them ("Motion") (ECF No. 98). For the reasons that follow, the court denies Defendants' Motion.

## I. BACKGROUND

In the aftermath of the financial collapse of Coshocton Memorial Hospital Association ("CCMH"), Plaintiff CH Liquidation Association Liquidation Trust and Joseph Oriti, in his capacity as Debtor Representative and Liquidation Trustee of the estate of CCMH ("Plaintiff"), filed a Complaint seeking redress for the injuries allegedly caused by eight Defendants (ECF No. 1). Plaintiff claims, among other things, that Defendants' misconduct led CCMH to file for Chapter 11

protection and/or deepened CCMH's insolvency. (Compl. ¶ 7.) Counts X and XI of the Complaint name CCMH's former attorneys, Bricker & Eckler, LLP ("Bricker") and Michael Gire ("Gire"), a partner with the firm, claiming attorney malpractice. (*Id.* ¶¶ 523–36.)

### A. Factual Background

Coshocton Memorial Hospital Association operated a general acute care not-for-profit hospital in Coshocton, Ohio, as well as a number of primary care and specialty physician clinics. (*Id.* ¶ 15.) As early as the fall of 2008, at a time of financial difficulty for CCMH and other rural hospitals, CCMH began a complicated relationship with Genesis Healthcare System ("Genesis"), a healthcare provider located in the same region as CCMH. Although the relationship would start with the CEO of Genesis and the CEO of CCMH, each serving as equals on a three-member not-for-profit healthcare alliance board, Genesis would later control the decisions of CCMH pursuant to a Management Agreement executed in 2012. (*Id.* ¶¶ 57–64, 90–121.) Eventually, the relationship ended when CCMH filed for Chapter 11 protection in 2016.

Plaintiff's twenty-count Complaint arises from the CCMH-Genesis relationship. In the Complaint, Plaintiff alleges a range of anti-trust and tort claims against CCMH's auditor, CCMH's executive leadership, Genesis's executive leadership, and, most relevant to this pending Motion, counsel for CCMH and Genesis. Plaintiff claims that Bricker and Gire committed malpractice when they "simultaneously represented Genesis and CCMH in their dealings with each other relating to, among other things, the Management Agreement and several ancillary agreements." (*Id.* ¶ 5.) In 2008, when Genesis, CCMH, and another regional hospital formed East Ohio Hospital Alliance ("EOHA"), a non-profit healthcare alliance, the EOHA retained Bricker to provide legal services and advice to the EOHA. (*Id.* ¶ 61.) During this time, Plaintiff states that Bricker had "developed

a relationship of trust" with CCMH. (Compl. ¶ 113, ECF No. 1.) In May of 2012, President and CEO of Genesis Matthew Perry ("Perry") and then-CEO of CCMH Robert Miller ("Miller") began discussing an arrangement whereby Genesis would manage the financially struggling CCMH. (*Id.* ¶ 90.) Plaintiff states Genesis hired Bricker to represent Genesis's interests in the negotiation and drafting of the Management Agreement. (*Id.* ¶ 112.) However, Plaintiff claims that in these negotiations, Bricker took advantage of the trust relationship it had previously built with CCMH. (*Id.* ¶ 114.) Specifically, Plaintiff maintains that Bricker negotiated directly and only with Miller, and did not include CCMH's outside counsel in these negotiations. (*Id.* ¶¶ 114, 119.) Furthermore, Plaintiff contends that Bricker negotiated with Miller, even though Bricker was aware that Miller was to be employed by Genesis following the execution of the Management Agreement. (*Id.* ¶ 120.) Thus, Plaintiff implies that because Bricker knew of Miller's self-interested motives in these negotiations, it would have also known that Miller may not have been representing the best interests of CCMH during these negotiations. (*Id.*) Accordingly, Plaintiff asserts that because Bricker knew that CCMH's interests were not being fully represented by Miller, Bricker was effectively representing both Genesis and CCMH in the parties' negotiations. (*See id.* ¶ 121.)

Finally, Plaintiff maintains that after the Management Agreement was executed, Bricker continued to purport to represent both Genesis and CCMH in the parties' negotiations and dealings with one another. (Compl. ¶ 121.) In particular, Plaintiff points to two situations supporting Plaintiff's allegations of Genesis's dual representation. First, Plaintiff states that Genesis tasked Bricker with preparing a Lab Services Agreement and asset purchase agreement between CCMH and Genesis, but on behalf of both parties. (*Id.* ¶ 345.) Plaintiff notes that Bricker purported to review the Lab Services Agreement on behalf of Genesis (*id.* ¶¶ 346–48), but Genesis also

anticipated that Bricker was to review the Lab Services Agreement on behalf of CCMH. (*Id*. ¶ 352.) Nevertheless, Plaintiff concedes that Bricker obtained conflict waivers from both Genesis and CCMH with respect to Bricker's preparation of the Lab Services Agreement. (*Id*. ¶¶ 346–48, 352.) Second, Plaintiff asserts that Bricker represented CCMH at CCMH Board meetings, and that its representation of CCMH was a conflict of interest with Bricker's contemporaneous representation of Genesis. (*Id.* ¶ 363.) Plaintiff points to the September 10, 2014, CCMH Board meeting in which Genesis's CEO asked Gire to represent CCMH at the meeting. (*Id.* ¶¶ 365–66.) Plaintiff states that Gire presented at the meeting, and stayed to answer questions from the CCMH Board. (*Id.* ¶¶ 370, 375.) Plaintiff asserts that Gire continued to attend board meetings and was still performing legal services for CCMH as late as May 4, 2015. (*Id.* ¶¶ 376–79.)

### B. Procedural History

On June 30, 2016, CCMH filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio. (Compl. ¶ 30.) CCMH continued to operate as debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 after the Petition Date. (*Id.* ¶¶ 30–31.) On October 3, 2016, the Bankruptcy Court entered an order approving CCMH's sale of substantially all of its assets, and the sale transaction closed on October 31, 2016. (*Id.* ¶¶ 32–33.) On July 12, 2017, the Bankruptcy Court confirmed the Chapter 11 plan (the "Plan"), and the Plan became effective on August 1, 2017. (*Id.* ¶¶ 34, 36.) Plaintiff filed the Complaint in the present action on April 3, 2018. (ECF No. 1.)

On July 25, 2018, Defendants filed their first Motion for Order dropping them from the action or, in the alternative, to sever the claims against them (ECF No. 54). The court denied Defendants' motion without prejudice, having found that it should first address the then-pending

motions to dismiss and motions for summary judgment. (ECF No. 69.) Following that Order, the court issued rulings on several motions to dismiss and/or motions for summary judgment that were filed in this case. (*See* Orders, ECF Nos. 72, 74, 78, 84.) There are now only 13 remaining claims: eight against Genesis, including a breach of fiduciary duty claim; one breach of fiduciary duty claim against Perry; one breach of fiduciary duty claim against Miller; two attorney malpractice claims against Defendants; and one accountant and professional malpractice claim against Blue & Co., a CPA firm that represented CCMH. (*See* Mot. at PageID #2110–11, ECF No. 98.)

On January 8, 2020, Defendants filed the present Motion. (ECF No. 98.) Plaintiff filed its Opposition on January 31, 2020. (ECF No. 104.) On February 7, 2020, Defendants filed their Reply. (ECF No. 110.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 21, in the event of misjoinder, the court may, on just terms, "add or drop a party" or "sever any claim against a party." *See Mann v. Mohr*, No. 18-4019, 2020 WL 398532, at *3 (6th Cir. Jan. 23, 2020). Misjoinder occurs when a party fails to satisfy the conditions for permissive joinder under Rule 20. *See Walls v. Host Int'l, Inc.*, No. 1:15-CV-00564, 2015 WL 4644638, at *1 (N.D. Ohio Aug. 4, 2015). Misjoinder alone, however, is not a ground for dismissing an action. *See Jackson v. Berean*, No. 19-1583, 2019 WL 6208147, at *2 (6th Cir. Nov. 19, 2019) (citing Fed. R. Civ. P. 21). District courts have sound discretion in deciding how to resolve misjoinder issues. *Kitchen v. Heyns*, No. 16-1243, 2016 WL 11618616, at *1 (6th Cir. Nov. 21, 2016) (holding "the manner in which the court handles misjoinder lies within the court's sound discretion").

Federal Rule of Civil Procedure 20(a)(2) provides that defendants may be joined in one

action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). As the Sixth Circuit has held, "[i]f the same issues of fact would determine both claims, they arise out of the same transaction or occurrence, but if the proof of one claim would have no connection with the proof of the other, the claims do not arise out of the same transaction or occurrence." *Moore v. Mich. Dep't of Corr.*, No. 17-6107, 2018 U.S. App. LEXIS 25325, at *4 (6th Cir. Sep. 5, 2018) (citing *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, It. v. Alexander*, 414 F.2d 143, 151 (6th Cir. 1969)). Many courts have found that "claims arise our [sic] of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and the court." *Walls*, 2015 WL 4644638, at *3. The "'series of transactions or occurrences' analysis is a flexible standard that 'enables the federal courts to promote judicial economy by permitting all reasonably related claims for relief . . . to be tried in a single proceeding.'" *Id.* (internal citations omitted). Because there is no bright line rule for making this determination, a case-by-case analysis is needed. *Id.*

In determining whether to sever claims, the court considers:

> (1) whether the claims arise out of the same transaction or occurrence;
>
> (2) whether the claims present some common questions of law or fact;
>
> (3) whether settlement of the claims or judicial economy would be facilitated;

>> (4) whether prejudice would be avoided if severance were granted; and
>>
>> 5) whether different witnesses and documentary proof are required for separate claims.

*Mann*, 2020 WL 398532, at *3 (quoting *Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018)). The court also considers "principles of fundamental fairness" and "resulting undue delay." *Spence v. Dexcom, Inc.*, No. 3:18-CV-0369, 2019 WL 302504, at *2 (M.D. Tenn. Jan. 23, 2019) (citing *Reynolds v. Merck Sharp & Dohme Corp.*, Case No. 3:15 cv 397, 2016 WL 3090951, at *2 (N.D. Ohio June 2, 2016)). The party requesting the court to sever a claim has the burden to show "that severance is required to avoid prejudice or confusion and to promote the ends of justice." *Spence*, No. 3:18-CV-0369, 2019 WL 302504, at *2. The court has "virtually unfettered discretion" in deciding whether to sever claims. *Id.*

### III. LAW AND ANALYSIS

Defendants request the court to issue an order dropping them from this action, or in the alternative, severing Plaintiff's claims against them. (Mot. at PageID #2109, ECF No. 98.) Plaintiff urges the court to deny Defendants' Motion. (Opp'n at PageID #2162, ECF No. 104.) The court will address each of their arguments in turn.

**A. Same Transaction, Occurrence, or Series of Transactions or Occurrences**

First, Defendants maintain that Plaintiff's Complaint fails the first part of Rule 20(a)(2)'s joinder test. (Mot. at PageID #2116.) *See* Fed. R. Civ. P. 20(a)(2)(A) (providing that persons may be joined as defendants if asserted against them is any right to relief arising out of the "same transaction, occurrence, or series of transactions or occurrences"). They contend that Plaintiff's claims against Genesis concern "essential facts" that "vary markedly," from the facts concerning

the legal malpractice claims asserted against them. (Mot. at PageID #2114.) But this argument ignores the fact that the breach of fiduciary duty claims and/or accountant and professional malpractice claims against the other defendants, as well as the legal malpractice claims against the moving Defendants, all involve a determination as to whether the defendants' breach of their respective duties contributed to CCMH's injuries.

Discovery for the claims against Defendants will necessarily require an inquiry into the nature of the Genesis-CCMH relationship and Defendants' connection to that relationship. Indeed, the Complaint clearly alleges that Defendants' actions, coupled with the actions of the other named defendants in this case, in whole or in part, deepened CCMH's insolvency and caused CCMH to file for bankruptcy. (Compl. ¶ 7.) The Complaint also alleges that Genesis targeted CCMH as part of its "strategic plan" to capture and control the patient market share in the region (*id.* ¶¶ 46, 51), that Genesis retained Defendants to provide advice on the implementation of this plan (*id.* ¶ 56), that Genesis caused CCMH to retain Defendants despite the clear conflicts of interest (*id.* ¶ 564), that Defendants simultaneously represented Genesis and CCMH (*id.* ¶ 121), and that Genesis directed Defendants' actions (*id.* ¶ 154). These allegations link Defendants to Genesis's "strategic plan" that allegedly deepened CCMH's insolvency and led to its bankruptcy. And this factual issue is relevant to the claims that are raised against Defendants and Genesis, and will be intertwined with a determination as to whether Genesis, Defendants, and/or the other defendants caused CCMH's insolvency. Thus, the court finds that the claims in this case are sufficiently related for purposes of Rule 20. *See Walls*, 2015 WL 4644638, at *3 (finding that Rule 20 only prevents joinder of "wholly unrelated" claims).

Defendants cite several cases where courts declined to exercise pendent jurisdiction and/or

-8-

supplemental jurisdiction over legal malpractice claims in support of their assertion that the claims against them arise from separate and distinct transactions and occurrences than the other claims in this case. (*See id.* at PageID #2115–16 (citing *Hunter v. Abi*, No. 2:13-CV-661-WKW, 2014 WL 495359 (M.D. Ala. Feb. 5, 2014); *Bush v. City of Philadelphia*, No. CIV. A. 89-8583, 1989 WL 149939 (E.D. Pa. Dec. 5, 1989); *Newsome v. Gallacher*, No. 11-CV-140-GKF-PJC, 2014 WL 2533402 (N.D. Okla. June 5, 2014)).) But these cases offer Defendants no support because, unlike those cases, Plaintiff's claims against them and the other defendants are factually related. *See, e.g., Hunter*, 2014 WL 495359, at *9–10 (finding there was no basis to exercise supplemental jurisdiction over a legal malpractice claim against a defendant attorney and defendant law firm because the legal malpractice claim "require[d] proof of an entirely separate set of facts unrelated to the other defendants' alleged misconduct"); *Bush*, 1989 WL 149939, at *2 (finding that the court could not exercise pendent jurisdiction over the plaintiff's legal malpractice claim because the claim did not "arise out of the same transaction or occurrence that [wa]s the subject matter of the [42 U.S.C. § 1983] federal claims" in the case, instead the claims "clearly arose at different times and concern[ed] different acts"); *Newsome*, 2014 WL 2533402, at *10 (declining to exercise pendent jurisdiction over the plaintiff's legal malpractice claims because, among other reasons, such claims "d[id] not arise from the same core facts" as the breach of fiduciary duty and aiding and abetting claims).

Defendants also cite several cases where courts found that legal malpractice claims were misjoined under Rule 20. (Mot. at PageID #2116 (citing *Burgess v. ebay, Inc.*, No. 1:11CV193, 2013 WL 2898022, at *7, 10 (M.D.N.C. June 13, 2013) (finding that eight of the nineteen claims from the plaintiff's complaint were misjoined because they "r[a]n too wide of a gamut to permit

joinder under Rule 20(a)(2)" and concerned matters that were "too distinct" from the allegations of governmental misconduct in the claims, and adding that the plaintiff's legal malpractice claim was also misjoined); *Phillips v. Knoll Pharm. Co.*, No. 5:03-cv-8044, 2003 U.S. Dist. LEXIS 28620, at \*16 (N.D. Ohio Sep. 4, 2003) (finding that the plaintiff's medical malpractice claims against several physician defendants were misjoined under Rule 20's standard to claims against pharmaceutical defendants, which concerned the manufacture of a drug); *Burgess v. Williams*, No. 1:11CV316, 2011 WL 5290155, at \*10 (M.D.N.C. Nov. 2, 2011) (finding that the court must enforce Rule 20's joinder limitations to prevent plaintiffs, like the plaintiff in that case, from joining dozens of unrelated claims against dozens of defendants in a single case to avoid paying the required filing fees)).)

But these cases are also distinguishable. First, *Burgess v. ebay*, 2013 WL 2898022 and *Burgess v. Williams*, 2011 WL 5290155 are two cases where the same *pro se* plaintiff, Albert C. Burgess, filed multiple unrelated claims against multiple unrelated defendants. The claims asserted against some defendants lacked any recognizable connection to other claims alleged against the other defendants in each of those cases. In this case, however, the claims are asserted against six defendants, who were involved in the Genesis-CCMH relationship as part of Genesis's "strategic plan," and are factually related. Indeed, as explained above, Plaintiff's claims involve a determination of whether the defendants' actions deepened Plaintiff's insolvency and caused it to file for bankruptcy.

Second, in *Phillips*, multiple plaintiffs filed suit against multiple unrelated physician defendants who prescribed Meridia to them. *See Phillips*, 2003 U.S. Dist. LEXIS 28620, at \*2–3. This drug allegedly caused the plaintiffs cardiovascular and cerebrovascular injuries. *Id.* The

-10-

plaintiffs also sued the pharmaceutical companies (the "pharmaceutical defendants") that manufactured and marketed Meridia. *Id.* at \*3. The court dropped the claims against the physician defendants after determining that those defendants were non-diverse and were dispensable parties. *Id.* at \*13. The court also determined that even though the physician defendants did not consent to the removal, it was not necessary to remand the claims against the pharmaceutical defendants.[1] In reaching this conclusion, the court found that the claims against the physician defendants, which concerned their prescribing Meridia to the plaintiffs, involved a "completely separate and independent transaction" from the remaining claims against the pharmaceutical defendants, which concerned the design, manufacture, promotion, and marketing of Meridia. *Id.* at \*17. Thus, the court found that because the physician defendants were non-diverse and misjoined, the fact that they did not consent to the removal did not require remand. *Id.*

Unlike *Phillips*, however, Plaintiff's claims against Defendants and the other defendants in this case do not arise from completely separate and independent transactions. Plaintiff maintains that Genesis had a relationship with Defendants, that Genesis caused CCMH to retain Defendants, and that Genesis directed Defendants' actions in its representation of CCMH. (*See* Compl. ¶¶ 55, 154, 564.) At minimum, these allegations suggest that Genesis's relationship with Defendants compromised Defendants' attorney-client relationship with CCMH. Indeed, Plaintiff maintains that Defendants simultaneously represented both Genesis and CCMH despite the clear conflicts of interest, and that Defendants drafted the very Management Agreement that enabled Genesis to

---

[1] The Sixth Circuit has held that all served defendants must join in the petition for removal. *See Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 532–33 (6th Cir. 1999).

manage CCMH for its own benefit. (*See* Compl. ¶¶ 5, 112, 442.) There is a clear relation between the claims asserted against all of the defendants in this case. Indeed, as explained above, Plaintiff's claims against the other defendants, as well as the claims against Defendants, all involve a determination as to whether the defendants' breach of their respective duties contributed to CCMH's insolvency and bankruptcy.

Furthermore, none of the cases that Defendants cite stand for the proposition that legal malpractice claims *per se* cannot be properly joined to other claims or that legal malpractice claims can never arise out of the "same transaction, occurrence, or series of transactions or occurrences" under Rule 20. Consequently, the court finds that the Complaint sufficiently demonstrates that the claims against Defendants arise out of the "same transaction, occurrence, or series of transactions or occurrences" as the other claims in this case. *See* Fed. R. Civ. P. 20(a)(2)(A). Therefore, Plaintiff has satisfied the first part of Rule 20(a)(2).

**B. Any Question of Law or Fact Common to All Defendants**

Next, Defendants maintain that Plaintiff's claims against them fail the second part of Rule 20(a)(2)'s joinder test. (Mot. at PageID #2121, ECF No. 98.) *See* Fed. R. Civ. P. 20(a)(2)(B) (providing that persons may be joined as defendants if "any question of law or fact common to all defendants will arise in the action"). They assert that the resolution of Plaintiff's claims against them, which concerns whether they failed to meet the standard of care and breached their duties owed to CCMH, do not affect the claims brought against the other defendants. (*Id.*) Defendants highlight two claims that Plaintiff have brought against Genesis, an equitable subordination claim and an avoidance of preference period transfer claim, which have no common elements to the legal malpractice claims asserted against them. (*Id.* at PageID #2119.) But this argument ignores the fact

-12-

that Plaintiff's breach of fiduciary duty claim against Genesis, as well as its claims against the other defendants in this case, involve a determination of whether each defendant breached their respective duties to CCMH and whether their conduct caused CCMH's injuries. Thus, as Plaintiff points out, there are factual and legal questions common to all defendants in this case. (Opp'n at PageID #2178, ECF No. 104 (arguing that "the same question of fact permeates the Complaint and is common to all defendants – did each Defendant succumb to pressure from Genesis and fail to adequately carry out its professional responsibilities to CCMH (and to what extent did each, in whole or in part, contribute to CCMH's financial collapse)?").)

Defendants contend, however, that joinder is improper because the mere fact that Plaintiff's claims "arise under the same general law does not necessarily establish a common question of law." (Mot. at PageID #2120 (quoting *Cooper v. Fitzgerald*, 266 F.R.D. 86, 91 (E.D. Pa. 2010)).) In deciding whether claims raise common questions of law or fact under Rule 20, courts consider the circumstances surrounding the claims, including the people involved in each claim, and the location and time frame of the events giving rise to the claims. *See Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 54 (D.D.C. 2012). In this case, Plaintiff's claims against all of the defendants concern the Genesis-CCMH relationship from the period between 2012 until 2016. (Compl. ¶¶ 6–7.) In addition, the claims against Genesis, Perry, Miller, and Defendants all involve their conduct with respect to the Management Agreement that was executed between Genesis and CCMH. (*See id.* ¶¶ 90–138, 451–479, 523–36.) Further, the circumstances surrounding all of these claims involves Genesis's alleged "strategic plan" to capture and control the patient market share in the region, its alleged targeting CCMH to accomplish this plan, and its engagement of Defendants to provide advice on the implementation of this plan. (*Id.* ¶¶ 46, 51, 56.) Thus, the court finds that there are

common questions of fact between the claims asserted against all of the defendants in this case.

Defendants also maintain that "even if there is some factual overlap [between all of the claims in this case], that overlap is insufficient for joinder to be proper." (Mot. at PageID #2120 (citing *Bojorquez v. Abercrombie & Fitch, Co.*, 193 F. Supp. 3d 1117, 1129 (C.D. Cal. 2016) ("these purported common questions of fact are too minimal to establish any meaningful link between the two types of claims")).) But in *Bojorquez*, a case involving claims brought under the Fair Labor Standards Act, the court was not considering whether joining defendants was proper, it was considering whether the joinder of multiple plaintiffs was proper. *See Bojorquez*, 193 F. Supp. 3d at 1129. Though all of the plaintiffs worked for the defendant, *see id.* at 1121, the court found that some of their claims were distinct and completely unrelated, *see id.* at 1128. One plaintiff alleged reporting time claims involving the defendant's failure to pay its employees for time spent calling into the store prior to work to receive instruction on whether they were required to work that day. *Id.* The other plaintiffs brought clothing and footwear claims involving the defendant's alleged policy requiring its employees to purchase and wear its brand-clothing and footwear without reimbursing the employees for their costs. *Id.* In dismissing the reporting time claims, the court concluded that those claims "contain[ed] little, if any factual similarity" to the clothing and footwear claims. *Id.* at 1128. As explained above, however, the claims in this case are factually similar in that they all involve the defendants' relationship to Genesis and whether their actions deepened CCMH's financial problems and caused its bankruptcy. Therefore, the court finds that Plaintiff has satisfied the second part of the Rule 20(a)(2) joinder test.

### C. Whether Severance Would Achieve a Just Result

As explained above, the court finds that Plaintiff has satisfied both parts of Rule 20(a)(2)'s

joinder test. As a result, the court need not consider whether the claims should be severed under Rule 21. Nevertheless, the court finds that severance would not be appropriate because it would not achieve a just result. *See* Fed. R. Civ. P. 21. Indeed, Plaintiff has alleged claims that link all of the defendants in this case to CCMH's financial problems and bankruptcy. Though the court acknowledges that different witnesses, possibly including experts, will be needed to establish the relevant standards of care that each defendant owed to CCMH, this fact does not persuade the court that severance is appropriate. If the claims were severed, there would still be a need to call some of the same witnesses and present some of the same evidence during the separate trials regarding the nature of Defendants' relationship with Genesis and the extent to which it may have contributed to CCMH's insolvency and bankruptcy. Defendants themselves admit that it would be judicially efficient to consolidate discovery on all of the claims in this case. (*See* Mot. at PageID #2109.) Furthermore, the court finds that judicial efficiency requires that this case proceed with the remaining claims against all of the defendants. Therefore, the court declines to sever the claims against Defendants from the other claims in this case.

## IV. CONCLUSION

For the foregoing reasons, the court denies Defendants' Motion (ECF No. 98).

IT IS SO ORDERED.

>  */s/ SOLOMON OLIVER, JR.*
> UNITED STATES DISTRICT JUDGE

June 2, 2020